# Lloyd *versus* Carter.

1. In an ejectment to recover real estate alleged to have been purchased by one, for and with the money of another, the resulting trust may be proved by parol, viz., by the admissions or declarations of the purchaser. When *fraud* on the part of the purchaser is alleged, the evidence to establish it should be clear and satisfactory.

2. The court, in answering affirmatively a point of defendant, is not to be confined to a mere affirmative answer, but may add such observations as are proper and calculated to assist the jury in applying the principle involved in the case on trial.

ERROR to the Common Pleas of *Delaware county*.

This was an action of ejectment brought by John Lloyd against his son Isaac Lloyd, to recover a lot of land *in the borough of Chester*, Delaware county. John Lloyd died after the institution of the suit, and Carter, his executor, was substituted.

Samuel Starr owned the lot in question in 1849. There was a house erected upon it in which Isaac Lloyd lived as tenant of

[Lloyd *v.* Carter.]

Starr, and kept a shoe store. He occupied all but a small building used as a hatter shop. On the 31st of December, 1849, he contracted with his landlord for the purchase of the property, agreeing to give him $2400 for it, on the 1st of April following. Isaac Lloyd paid $160 rent. The hatter shop rented for $40.

On the 6th day of April, 1850, Isaac Lloyd paid $1200 of the purchase-money. Starr the same day executed and delivered a deed to him, and took a judgment for the residue of the purchase-money.

Soon after the deed was made, Isaac contracted with several mechanics for the erection of a large double brick dwelling. The old buildings were torn down, and the new buildings completed in the course of the same summer. Its annual value was about $500. Isaac Lloyd, after the new building was erected, moved into one part, and let the other to a tenant, and continued to occupy it up to the time of the trial of the ejectment.

Isaac Lloyd, in May, 1850, while his building was in progress, left home, and was absent two weeks. The idea went abroad that he had eloped, and his father, John Lloyd, the plaintiff, sued out a foreign attachment against him, and directed the sheriff to attach the property in question, which was done.

After an absence of about two weeks, Isaac returned. Some short time elapsed, and this ejectment was instituted.

The ground assumed by the plaintiff at the trial was, that the property in question was held by Isaac for his father, by virtue of a parol trust; and he gave in evidence certain conversations of Isaac with two persons at different times, to establish that allegation. One of those conversations was before the deed was executed (the length of time not proved), but after the contract of purchase was made. The other was two weeks after the deed was executed.

The defendant objected to the reception of the testimony of the witnesses, and it was admitted under exception.

The propriety of the ruling of the court, on the question of the admissibility of this testimony, was the first question.

The other questions arose on the charge of the court on points presented on the part of the defendant.

William H. Lane testified, that he purchased *John* Lloyd's real estate in Nether Providence, about the 1st day of January, 1850; he was to pay for it $3300; that he paid $100 to *Isaac* Lloyd on the day he bought the place. The balance of the purchase-money he paid on the 2d day of April, 1850; a part thereof, $1329.18, he paid by his check on the bank of Delaware county. The check was shown to the witness. He said that *John* Lloyd told him to pay *Isaac* $100. "I came down to Chester and gave the $100

[Lloyd *v.* Carter.]

to Isaac; brought John Lloyd's bank book along; I don't know what he did with it; I told Isaac that John Lloyd had sent the bank book down for him to put the $100 in bank for him; I don't recollect that he made any reply; when I first went to Chester to talk with Isaac about the property, he said he had purchased the property in Chester.

Samuel Starr testified.—I sold the property described in the writ to Isaac Lloyd, on the 31st day of December, 1849; Isaac Lloyd paid for the property on the 6th day of April, 1850; he paid me in a check on the bank; there was a deed executed on the 6th day of April; I delivered it to Isaac Loyd; he lives in Chester; he occupied then the same property he now occupies.

\*        \*        \*        \*        \*        \*        \*

Another witness testified, that the check (viz., the one given by Lane) was deposited by *Isaac* Lloyd to his own credit, April 6, 1850; that a check of Isaac Lloyd's was paid on the same day to Samuel Starr, for $1200. The amount was drawn out of the $1329.18; Isaac had an account in bank open at the time; the balance, however, did not exceed $1.56.

George Williamson testified:—That Isaac Lloyd said to him that he had bought a lot in Chester for his father.

This evidence was objected to, but the objection was overruled.

*Esery*, another witness, testified, that John Lloyd spoke of the property as his, in the presence of Isaac; that Isaac made then no reply, but after leaving the room Isaac said to the witness that the property was deeded to him, and assigned as a reason that if the property should be sold at an advanced price, he was entitled to it, as he had all the trouble.

This testimony was objected to.

On the trial, the counsel of the *defendant* submitted various points. The points, and answers by CHAPMAN, J., were as follows:—

1. When a purchaser has paid for real estate *with his own money* or with money borrowed, no declaration by parol of the purchase having been made for the use or benefit or as agent of another, will suffice to turn the purchaser into a trustee, or to enable the person in whose favor the declaration was made, to recover the property from the purchaser in ejectment.

Answer.—This is true.

2. A purchaser of real estate does not become a trustee by the fact of his having paid for the estate, with money which he had in

[Lloyd *v.* Carter.]

his hands as agent; and the principal cannot recover the estate, from the hands of said purchaser, in ejectment.

. Answer.—True, unless he was agent for the particular purpose.

3. An agreement to convey a title to be acquired and paid for thereafter is not a trust; nor are any declarations made by the person intending to purchase, evidence of a trust; nor will the payment of money by one man after a purchase has been completed by another, raise a trust in favor of the person by whom the money was furnished.

Answer.—It is true; an agreement to convey a title, to be acquired and paid for thereafter, is not a trust. And as a naked proposition, " declarations made by the person intending to purchase," may not be evidence of a trust; but as applied to this case, it will depend upon the circumstances. If the jury are satisfied Isaac Lloyd declared he intended to purchase this property for his father, and afterwards received from him the money to pay for it, consistent with such declarations, and then, in violation of the terms upon which he received the money, had the deed made to himself, such declarations are evidence. It is for the plaintiff to satisfy the jury of this. If the money was received as a gift, or a loan, such declarations would not be evidence.

A payment of money by one man after a purchase has been completed by another, will not raise a trust in favor of the person by whom the money was furnished. It would be simply a loan.

4. Parol declarations to establish a trust are to be received and applied with great caution. It is a most unsatisfactory species of evidence, on account of the ease with which it may be fabricated, and the impossibility of contradicting it; besides, the slightest mistake or failure of recollection may totally alter the effect of the declaration, and the danger of mistake is greatly increased when witnesses undertake to speak from memory alone, and without the assistance of any writing; such evidence is pregnant with all the danger intended to be guarded against by the statute of frauds.

Answer.—This is true. But parol evidence is not to be rejected. It is to be weighed with care. It ought to be clear and satisfactory. If it is not, it should be rejected.

5. The allegations of the plaintiff involve a gross fraud, and fraud must never be presumed; but whoever alleges it must prove it by such clear and satisfactory evidence as will establish its existence in the minds of the jury.

Answer.—This is true.

6. In order to entitle the plaintiff in this case to recovery, he must prove to the satisfaction of the jury, that the defendant procured the money from his father to pay for lands which were to be conveyed to him, the father, and instead of doing so, fraudulently took a conveyance of the same to himself, of which facts the evidence in the case does not supply the necessary proof.

[Lloyd *v.* Carter.]

Answer.—The first branch of the proposition is true. Whether the evidence establishes these facts, is a question for the jury.

Defendant's counsel requested the court to reduce the above answers to writing and file the same. He excepted to the answers to the 3d, 4th, and 6th points, and desired the court to seal a bill of exceptions to the same.

· The jury found a verdict for the plaintiff, on which judgment was rendered.

It was assigned for error:
1. The court erred in admitting the evidence of George Williamson.
2. The court erred in admitting the evidence of Jonathan Esery.
3. The court erred in their answer to the defendant's third point.
4. The court erred in their answer to the defendant's fourth point.
5. The court erred in their answer to the defendant's sixth point.

The case was argued by *Lewis*, for plaintiff in error.—The conversation to which Williamson testified is stated to have occurred *after* the purchase and before its consummation. It did not prove . any *previous* agreement. Such a transaction was not evidence of a trust: 5 *Watts* 390; 2 *Watts* 323.

That the conversation testified to by Esery was liable to the same objection. The 3d and 4th points should have been affirmed. 5. It is error to submit a question of fraud or mistake to a jury on slight, trivial parol evidence: 1 *W. & Ser.* 195; Irwin *v.* Shoemaker, 8 *W. & Ser.* 75; 10 *Watts* 195.

*W. Darlington*, contrà.—Parol evidence is admissible to establish a trust: 1 *Dal.* 193; 3 *Bin.* 304; 2 *Ser. & R.* 526. It was immaterial at what time the admissions were made; they refer to the fact of the property being purchased or held in trust: 7 *Barr* 423, Murphy *v.* Hubert. Such trusts as this are not within the statute of frauds. When an estate is purchased in the name of one with the money of another, there is a resulting trust by operation of law: 2 *Atk.* 148; 3 *Bin.* 305, German *v.* Gabbald; 2 *Ser. & R.* 523.

The opinion of the court was delivered January 16, b
COULTER, J.—A trust may be proved by parol. It is now too late to question that principle: Gregory *v.* Setter, 1 *Dall.* 193; German *v.* Gabbald, 3 *Bin.* 304; Wallace *v.* Duffield, 2 *Ser. & R.* 526. The evidence offered, connected with strong attending

[Lloyd *v.* Carter.]

circumstances leading to proof, conduced to establish *a resulting trust* (a phrase with which the learned counsel for the plaintiff in error is entirely dissatisfied), in the opinion of the court below.   It resulted from the facts that the money which paid for the land belonged to the father, who was aged and infirm; that the son acted as his agent; that he declared both before and after the deed from the vendor to him that it was his father's property. That he stood by and heard his father call it his own property, and declare that he would make his son a title for a part of it. That the vendor, who was called by the son as a witness to show that all the negotiation for the sale was with the son, declared often that he thought at the time the deed was made that it was wrong; he thought the deed ought to be made to the man whose money paid for the property.   All these facts, if believed by the jury, together with many attending circumstances, such as the embarrassments of the son, and his need for money before that time, and the circumstance of the father having sold his plantation for $3000, shortly before the purchase, established a resulting trust in the father, and the evidence covered by the two bills of exceptions was properly admitted.   It is useless to press arguments on this court as to the danger of such testimony, and the care and caution with which it ought to be received.   The law allows it, and such considerations are for the jury.

But there is danger from written testimony as well as oral. Writings may be forged, and cunning may give to new papers the rust and hue of time.   The calendar of crime would perhaps exhibit as many convictions for forgery as for perjury.   All human testimony by which the rights and property of citizens are disposed of ought to be examined with care and circumspection.   It is sufficient that our law allows the establishment of a trust, resulting or direct, by parol: Haines *v.* O'Conner, 10 *Watts* 313; Martin *v.* McCord, 5 *Watts* 493; Swartz *v.* Swartz, 4 *Barr* 359; Murphy *v.* Hubert, 7 *Barr* 420.

This writ of error is in fact derelict against the finding of the jury.

The error assigned to the answer of the court to the third point cannot be sustained.

As a naked or abstract proposition, which in fact it is, the point is well enough, and the court below answered it in the affirmative; but, in order that the jury might not be misled, he added a few words by no means impugning or denying the plaintiff's proposition, but essentially proper and lawful, to assist the proper application of the principle to the case in hand.

A court must be allowed that liberty, or else an artful abstract proposition might sometimes beguile a jury, if the answer of the court was yea or nay.   Everything the court said was just and

T 2

[Lloyd *v.* Carter.]

lawful.   The only objection of the counsel was that the court did not administer his pill just as he made it.

There is nothing in the fourth and fifth errors assigned.

The answer of the court in fact affirms the fourth point submitted, which embodies all the deprecatory expressions of the court as to oral testimony; and only adds that although all this be true, parol evidence is not therefore to be rejected.

The answer to the sixth point contains no error.   The answer of the court as to the law is in fact in favor of the plaintiff in error, but submits the facts on which it is based to the jury.   This was right.

Judgment affirmed.