Bernice W. Jackson et al., Exrs. of George D. Jackson, Deceased, Appts., v. B. Rush Jackson et al., Exrs. of Josiah Jackson, Deceased, et al.

In a suit in equity to establish and enforce a resulting trust in land, *held* as follows:

A resulting trust in lands may be proved by parol.

Payment of the purchase money, possession, and improvements, by the *cestui que trust*, and declarations of the alleged trustee, are evidence to prove the trust.

The statute of limitations is no bar to the action where the *cestui que trust* continues in possession.

Presumptions are in favor of the legal title when neither party is in possession, but when the *cestui que trust* occupies the land, they are wholly against the trustee.

The court of common pleas of a county may entertain a bill to establish a trust in lands situate in another county, when the parties are within its jurisdiction.

(Argued March 15, 1887.  Decided March 28, 1887.)

January Term, 1886, No. 381, E. D., all the Judges present.

Cited in Eshbach v. Slonaker, 1 Pa. Dist. R. 32, 35; Mengel v. Lehigh Coal & Nav. Co. 24 Pa. Co. Ct. 155.

NOTE.—Where equity has jurisdiction of the parties, relief can be granted though the subject-matter be in another country (Jennings Bros. v. Beale, 158 Pa. 283, 17 Pa. Co. Ct. 25; Clad v. Paist, 181 Pa. 148, 37 Atl. 194; Earle v. Altemus, 4 Pa. Dist. R. 613, 27 Atl. 948); but the right to the exercise of this power, when the property is in another state, has been said to be doubtful (Thomas v. Hukill, 131 Pa. 298, 18 Atl. 875). The court should have power to enforce the decree made. Morris v. Remington, 1 Pars. Sel. Eq. Cas. 387; Bank of Virginia v. Adams, 1 Pars. Sel. Eq. Cas. 534.

Appeal from a decree of the Common Pleas of Bradford County in favor of complainants in a bill in equity to establish and enforce a resulting trust in lands.    Affirmed.

This was a bill in equity filed May 6, 1881, by B. Rush Jackson and James Thomson, surviving executors of the last will and testament of Josiah Jackson, and Emily L. Patrick, formerly Jackson, and H. W. Patrick, her husband, in right of the said Emily L. Patrick, against Bernice W. Jackson, executrix, and George C. Jackson, executor, of the last will and testament of George D. Jackson, deceased, to establish a resulting trust in two thirds of 102 acres, 70 perches, of coal land in Sullivan county, and to compel a conveyance thereof to complainants.

The complaint and its amendments set forth:

1. That Josiah Jackson, George D. Jackson (in their lifetime), and B. Rush Jackson were the owners of an undivided one half of 523 acres and 110 perches, situate in Cherry township, Sullivan county, Pennsylvania.

2. That the parties named were partners in business under the name of Jackson & Sons, until the death of Josiah Jackson, after which the others continued business as Jackson Bros. That the title to the land mentioned was held, in trust, by George D. Jackson, for himself and the others named.

3. As shown by a written declaration of trust dated July 4, 1861 [setting it out in full.]

4. That George D. Jackson in 1866 acquired an undivided 3/17 interest in the same 523 acres, etc., by conveyance from Francis Jordan, Samuel H. Bibighaus, Thos. J. Woolf et ux. by deed dated September 20; and by a conveyance dated two days later, said George D. Jackson took from M. C. Mercur and Charles F. Welles, Jr., an undivided 5½ seventeenths parts of 102 acres and 70 perches, which were in turn a part of the original 523 acres, etc., before mentioned. That October 24, 1866, George D. Jackson and wife conveyed to the Sullivan & Erie Coal & Railroad Company eleven and one half seventeenths of 421 acres, 40 perches, of the same land, leaving for himself the legal title to the exact land in controversy, to wit, 102 acres, 70 perches.

5. That the foregoing acquisitions and the grant of George

D. Jackson were in pursuance of an understanding between George D. Jackson, Josiah Jackson, B. Rush Jackson, and the Sullivan & Erie Coal & Railroad Company, by which the company was to obtain full title to the 421 acres, 40 perches, of the said 523 acres, 110 perches, and George D. Jackson full title to the remainder, to wit, 102 acres and 70 perches, the same being for himself, Josiah Jackson, and B. Rush Jackson equally, and that the conveyances made by Jordan, by Woolf, by Bibighaus, by Mercur, and by Welles, were but the steps in carrying out this arrangement, and were in the interest of the company and of the Jacksons, to the extents set forth, the whole being paid for, under stipulation with the Jacksons, by the coal and railroad company, in the stock of the corporation.

6. That Josiah Jackson died April 9, 1867, testate and leaving heirs, six in number.

7. That the 102 acres, etc., is a valuable coal tract, and has been entered upon and in possession of Josiah Jackson, George D. Jackson, and B. Rush Jackson, an opening made, and coal mined and sold for their joint account and interest, and books kept relating to the same, first in the name of Jackson & Sons, and after the death of the father, by the sons as Jackson Bros.

8. That George D. Jackson died November 23, 1879, and by his will appointed the defendants executrix and executor thereof, with power to sell and convey real estate as fully as the testator himself could have done.

9. That B. Rush Jackson has conveyed his interest in the land to Emily L. Patrick.

10. That Josiah Jackson was in his lifetime entitled to one undivided third of the 102 acres, and the same was by his will vested in Geo. D. Jackson, B. Rush Jackson, and James Thomson as trustees, one sixth part for each of the following named children as *cestui que trust:* George D. Jackson, B. Rush Jackson, Frances Ann Gottlieber, Elizabeth C. Thomson, Mary Webb Lippincott, and Emily L. Patrick. That the remainder of the tract was vested, one third in George D. Jackson and one third in B. Rush Jackson.

11. That by the death of George D. Jackson the legal title to the land became vested in his executrix and executor, subject to the existing trusts.

12. That by the death of George D. Jackson, one of the executors and trustees under the will of Josiah Jackson, B. Rush

Jackson and James Thomson became the surviving trustees and as such are entitled to a conveyance from the representatives of George D. Jackson for one third (six eighteenths) of the land in controversy, and Emily L. Patrick, as grantee of B. Rush Jackson, is entitled to one undivided third.

13. That the defendants claim to hold the land in fee and to the exclusion of the trusts mentioned, denying the interests of the plaintiffs.

The defendants demurred to the bill, on the ground that the lands were situate in Sullivan county and not within the jurisdiction of the court; that it appears from the face of the bill that the remedy is full and adequate at law; and that the bill does not set forth the residences of the parties. The court overruled the demurrer and ordered defendants to answer.

The defendants' answer admitted the substance of paragraphs 1, 2, 3, and amended paragraph 4, also paragraphs 6, 8, and 9.

It denied paragraph 5, as to each and every allegation, except that the considerations for the conveyances of Jordan, Woolf, Bibighaus, Mercur, and Welles to George D. Jackson were paid in the stock of the Sullivan & Erie Coal & Railroad Company.

It admitted paragraph 7, to the extent that the land is a valuable coal tract, from which coal has been taken by Jackson & Sons and Jackson Brothers. But defendants aver that they have no knowledge of the arrangement, if any, under which the coal was mined, and further, that whatever possession was exercised by these firms was by permission of George D. Jackson and under him.

It admitted paragraph 10, as to the recital of the trustees and cestuis que trust under the will of Josiah Jackson, but any conclusions drawn therefrom are denied.

The answer denies generally the plaintiffs' ground of complaint and presents the corpus of the defense by averment—as follows: "We deny that the legal title to the said 102 acres and 70 perches of land became vested in us subject to the terms of any declaration of trust whatever, and we aver on information and belief that on or about the 22d day of September, 1866, all interest of Josiah Jackson and B. Rush Jackson in the said lands under the terms of the said declaration of trust of July 4, 1861, ceased and determined, and that the said declaration of trust was delivered up to the said George D. Jackson, under an arrangement with B. Rush Jackson and Josiah Jackson, pur-

suant to which George D. Jackson conveyed for their joint bene-
fit on the 24th day of October, 1866, to the Sullivan & Erie Coal
& Railroad Co., by deed printed as exhibit C, an interest in 421
acres and 40 perches of the said 523 acres and 110 perches of
land in the said declaration of trust of July 4, 1861, mentioned,
more than equal in value to the undivided ½ of the said 523
acres and 110 perches, and equal to 285 acres in quantity."

In answer to paragraph 12 the position of B. Rush Jackson
and James Thomson as surviving executors of Josiah Jackson,
is admitted,—the rest denied.

The answer to paragraph 13 is an averment of ownership in
the land, when the plaintiffs' bill was filed, and a denial that the
plaintiffs had any interest therein.

James H. Codding, Esq., was appointed master, who reported,
*inter alia,* as follows:

Our starting point is found in the conveyance produced in
evidence, executed November 8, 1859, by Michael Meylert and
wife, to George D. Jackson, for an undivided ½ interest in 523
acres and 110 perches of land, being parts of six warrants in
Sullivan county. It is the west end of this land which is now
in question. July 4, 1861, is the date of the next paper, to
which so much importance is attached. It is a declaration by
George D. Jackson, that "whereas, the said George D. Jackson
and Josiah Jackson and B. Rush Jackson . . . at their joint
and equal expense have purchased" the interest in the land, to
wit, the 523 acres, etc., "and at the special instance and request
of them, the said Josiah Jackson and B. Rush Jackson, he,
George D. Jackson, obtained a conveyance from Michael Mey-
lert, in his own name solely, for the whole of the land so pur-
chased"—now he the declarant "doth testify, declare, and ac-
knowledge, that he stands seised, and doth covenant that he and
his heirs shall and will at all times hereafter stand seised, of one
full, equal, and undivided third part of the undivided half part
of the land," to the use of Josiah Jackson, his heirs, and as-
signs, and one like third to the use of B. Rush Jackson, his
heirs, and assigns; and that upon any sale or division of the
property, he will grant, convey, or assure to the purchaser or to
his *cestui que trust,* their proper share of the land or interest in
the proceeds.

This declaration is here claimed as the corner stone of the

plaintiffs' case. Was it ever repealed, canceled, or annulled by the parties, either by their concurrence or any implication from their actions? This is important, for there is no written evidence showing any change of title to the half of the land in controversy here, since the delivery of the above deed, affecting it in 1859, and the execution of this declaration July 4, 1861.

We may here, from all the evidence, generally review the status of the parties allied in this purchase, as disclosed by the declaration. Josiah Jackson was a well-known and respected citizen,—a physician, long resident in Sullivan county. The others were his sons, associated with him in mercantile pursuits, at Dushore, under the style of Jackson & Sons.

[This firm was from time to time interested in acquiring land, and the method used in the transaction just mentioned was no novelty to them; for in two instances, at least, in the evidence in this case, a similar course was held—in one, the title being taken by the father, in the other by B. Rush Jackson, and both were followed by declarations showing the common interest of all.]

Other deeds in evidence prove the peculiar changes of title which occurred in the fall of 1866, and are set forth in the plaintiffs' bill. The key to these movements is found in the fact that a railroad and coal company was being organized for operation near or upon these very lands, and that the Jacksons were associating with others in taking a leading part.

[One thing, however, for a time, complicated the arrangement, and it is clearly in the evidence. George, with a sagacity which was prophetic, declined to embark all their coal interests in the new corporation, for coal was known to be upon this land, and insisting upon his views, so arranged with other corporators, who at first objected, that he was able to reach the end sought.]

By Meylert's deed, he then had legal title to ½ the 523 acres, 110 perches—by deed from Jordan, Woolf, Bibighaus, he acquired three undivided seventeenths parts of the same land. The balance of the title was in Mercur and Welles, and from them he obtained 5½ seventeenths of the 102 acres, 70 perches, which he sought to obtain; he then conveyed to the new corporation, 11½ seventeenths of 421 acres, 40 perches (all his title therein), and so stood as the holder of the legal title to the now divided and separated 102 acres, 70 perches, which it was his object to procure. Was this transaction for himself or for his

firm? Did any other cotemporary transactions with the coal company have any influence upon this? Who, then, owned the land? The answer is the solution to this suit.

If Dr. Josiah Jackson thought the matter needed any explanation, it was not long, for he died April 9, 1867; and the substance of his will, as creating parties to this suit, is admitted by the pleadings. The firm name of Jackson & Sons became Jackson Brothers, and business went on as before.

[The plaintiffs have produced in support of their claim, outside the deeds and declaration, three independent lines of evidence, which are intended, of course, to be mutually corroborative, pointing toward a common central fact: First, the admissions and assertions of George D. Jackson himself as to the real ownership of the 102-acre tract, commonly known as near the "Millheim" opening; second, the books of Jackson & Sons and Jackson Brothers showing entries largely in the handwriting of George D. Jackson, and all under his supervision, respecting the mining and sale of coal from this tract, and treating these transactions as at the expense and for the benefit of the firm; third, a sort of mathematical demonstration, which influences the case, by showing an equality of the parties named, in their connection with the Sullivan & Erie Coal & Railroad Company, its organizers, and in the stock issued for their lands; in other words, that George D. Jackson gave no more for his interest in the disputed land than did his partners, or that the partners received nothing for an asserted concession of interest, which George retained.]

[In the first instance, sixteen witnesses have testified to statements, in conversation and otherwise, with George D. Jackson, indicating, not an individual ownership in this land, but a common one in the members of the firm of Jackson & Sons. In each case this land has been identified as the subject of the association; and all, with one exception, were made subsequent to the several transfers of 1866. These statements came mostly in shape of information from the speaker to his hearers, and differed among themselves greatly, in manner and form,—from mere reference to the land as "ours," to an unqualified assertion that it belonged to Jackson & Sons.]

The names of the witnesses are:

Theo. Ackley, Jasper Clark, Levi Hunsinger, J. K. Farrell, J. M. Heacock, J. B. Cox, P. Armstrong, J. W. Martin, H. Wil-

liams, Charles Kissner, Christian Millheim, H. P. Moore, Horace Arnout, B. M. Sylvara, William Stevenson, J. S. Andrews.

[The admissions and statements recited by these parties are not altogether casual, but come in such circumstances that it was reasonable to expect the truth.

The testimony of the following persons, considered in this last connection, may be important: of J. K. Farrell, who was assessor in Cherry township as late as 1869; of Dr. J. M. Heacock, who was county treasurer in 1872. The conversations related by them are almost official. Also of H. P. Moore and William Stevenson who enjoyed unusual and friendly acquaintance with George D. Jackson in his lifetime. If their evidence amounts to anything, it is that he made unequivocal statements that the coal lands, the land in question, belonged to Jackson & Sons.]

No less definite, in respect to individual ownership, is the deposition of J. S. Andrews, but to him Jackson Brothers were named as the owners. It was after the doctor's death. . . .

Upon the subject opened by the second branch of the evidence, several witnesses are called to prove that the possession of the land was in Jackson & Sons up to the doctor's death and subsequently in Jackson Brothers: Millheim, who worked eleven years at the coal opening bearing his name, Jasper Clark, who gave orders for the coal, Charles Kissner, who was a carpenter doing work at the mine. These testified of the father and two brothers as possessing and operating the land and mine, and directing the work done there.

Copious extracts are given from the books of Jackson & Sons and Jackson Brothers, cash books, coal books, day books, chiefly in the handwriting of George D. Jackson, and showing that he charged himself with coal from the mine; that all matters connected with the coal business were conducted by the two firms successively, and that they paid its expenses, taxes, etc., and put the receipts from it in the common till.

The defendants do not deny this, but say that this possession and use were by permission of George D. Jackson and under him. Of this, hereafter.

[Upon the third branch of the plaintiffs' evidence, that which endeavored to show the even relations of the parties in the conveyances to the Sullivan & Erie Coal & Railroad Company, and its issue of stock in return, no infallible conclusion can be

reached. The figures admit of several combinations, and none of them are just right.]

It would seem that death has precluded full explanation. It is clear, however, that the three Jacksons conveyed to the company a large amount of land (more than 2,000 acres), and of this perhaps all was subject to trusts, among themselves or for others.

[George conveyed 645 acres, 46 perches, in Cherry and Colley townships, which he had by some arrangement for or with Michael Meylert. Also eleven and one half seventeenths of 421 acres, etc., in warrant names of Norris and others. With the latter tract we are familiar. It is land conveyed by Meylert, November 8, 1859, and for which, with the 102 acres, etc., now in controversy, the declaration of the trust of July 4, 1861, was executed. These eleven and one half seventeenths are the original one half (8½ 17ths) conveyed by Meylert, and three seventeenths (3 17ths) conveyed to him by Francis Woolf, Thomas J. Woolf, Samuel H. Bibighaus. And here we find that George D. Jackson paid no consideration to these parties for the three seventeenths. He was but their agent, the bridge over which their title passed to their company as to 421 acres, etc., to himself as to the 102 acres and 70 perches.]

B. Rush Jackson conveyed to the company 1,038 acres, which appear to have been affected by a trust.

From Mr. Mercur's evidence as to the value given to land in forming the railroad and coal company, to wit, $200 per acre— 4,274 shares of stock should have been issued to the Jacksons in return. The evidence discloses but 3,439 shares issued to them directly, and these were diminished by transfers: to M. C. Mercur, 425 shares; to Francis Jordan, 123 shares; to S. H. Bibighaus, 61 shares; and to Michael Meylert, 891 shares, until finally there remains: to George D. Jackson, 646 shares; to B. Rush Jackson, 646 shares; and to the estate of Josiah Jackson, 647 shares, practically an equality in result, too nearly so to be accidental.

The defendants' offer, by T. J. Vanderslice, J. G. Wright, and F. F. Lyon, to procure declarations made by George D. Jackson, to the effect that the land in question was his, and his only. This is claimed to be rebuttal, but must probably weigh as other declarations made in the interest of the declarant, and not in the presence of those affected by the claim. Mr. Mercur

gives an interesting account of what was said to him by the brothers, a short time before George's death. It is certain from this that cordiality, if not friendship, had ceased between them; that George at that time claimed the land, while Rush, consistently with his present position, asserted that it "belonged to George, Rush, and father's estate." These statements were not made, however, by the brothers in each other's presence.

The foregoing may show this much: that George's declarations were not invariably to the effect of a firm or common ownership; but if he considered the land his own, and his title beyond doubt, it is not easy to understand the anxiety he expressed to Vanderslice, and his wish to see Judge Elwell or Mr. Buckalew on the subject.

[Six receipts from the county treasurer, for taxes, were produced in evidence, the intent being to show that George D. Jackson supported a burden of ownership, not likely to be usurped by a disinterested party, and himself paid the taxes upon this property, as his own. Granting these their weight, they are silently disputed. The first one, dated June 6, 1868, for $12.75, for taxes upon the George Fox and Joseph P. Norris warrants, is undoubtedly the same item as the entry in coal book, page 54, "expenses," Jackson Brothers, for date, amount, and purpose coincide. The second and third receipts are for same tracts, *inter alia;* and here again entries are found, on the coal expense book of the firm, pages 93, 94, showing payments for taxes on the same dates, the amounts being about one fourth less, as taxes upon other warrants were paid for at the same time.]

The fifth receipt is indorsed on its back "Paid by G. D. J." in George D. Jackson's handwriting. Why this, if paid by him upon his own land? . . .

[It is admitted, we believe, that all presumptions adverse to the declaration of trust must arise from the transactions of 1866, and in the failure of these it is entitled to its original vitality, so far as it affects the land in question. Upon the evidence, and from the views herein expressed, the master finds that there are no such adverse presumptions; in fact, that there is no evidence of its cancelation or rescission. It is therefore still in force as to one half the land.]

As to the other moiety, we recapitulate: George D. Jackson did not complete his legal title by any arrangement with the Sullivan & Erie Company. This tract never was included in the

proposed or established boundaries of that corporation. Three seventeenths came from Jordan, Woolf, Bibighaus, who conveyed that interest in the entire 523 acres, etc., considered their share equal to 92 acres.

[These were evidently considered as part of the 421 acres which went to the company, for the company-paid them for just that amount. This course would depress the share of the Jacksons in the 421 acres just the 3/17 of the 102 acres and no more. The real bargain which closed the gap in the title was with Mercur and Welles.]

Mr. Mercur tells of the accepted proposition, emanating from himself and Welles: "We will give you enough of our land outside the (S. & E.) line to make the 100 acres, receiving payment by stock from the company of an equal quantity of land you deed to them."

[Now, who paid the consideration? We quote Mr. Mercur again: "The stock was issued to Welles and myself for that quantity of land in excess of our deed to the company, and the stock to the Jacksons was that much less. . . . I mention the Jacksons, meaning the doctor, George, and Rush."]

[In deference to the defendants' position on this subject the master has studied this part of the case with special care, and the foregoing foreshadows his conclusion. He is unable to find that George D. Jackson conveyed to the Sullivan & Erie Company, in individual right, any such excess of land, above that of his partners, as to extinguish their rights in the original trust, or acquire for himself the remainder of the title; nor is there a spark of evidence showing that any such arrangement was contemplated among them, and we think he was precluded from so doing without such understanding, by the fiduciary relation he then sustained. We believe further that the three Jacksons stood on terms of substantial and real equality as to this land from their first title in 1859 to and through all the transactions of 1866.]

[It is, therefore, found that the consideration which was paid at the time when George D. Jackson took the legal title to the second half of the 102 acres proceeded equally from Josiah Jackson, George D. Jackson, and B. Rush Jackson, and was paid from lands held by them, which were conveyed to the Sullivan & Erie Company, Mercur, Welles, and others taking the stock therefor, pursuant to their arrangement. Upon this the

conveyances of 1866 established a resulting trust]—Barnet v. Dougherty, 32 Pa. 371; Bickel's Appeal, 86 Pa. 204; and the parol evidence which has been presented is entitled to its proper weight. Lloyd v. Carter, 17 Pa. 220; Lynch v. Cox, 23 Pa. 268; McGinity v. McGinity, 63 Pa. 38; Nixon's Appeal, 63 Pa. 279.

This evidence is much strengthened by the fact of possession, which is undisputed. The trustee and *cestui que trust,* equal in interest, were not only mere possessors, but exercised and incurred notorious acts of ownership and obligation prior to Dr. Jackson's death; and since that time there has been no other possession than that of George and Rush, who were in unchanged relation to each other and were, both, executors of their deceased father's will, privies in blood and estate.

Said BLACK, Ch. J., in Lynch v. Cox, 23 Pa. 268: Where *"cestui que trust* proves the purchase money to have been his, he makes a strong case; it is much strengthened by showing that he went into possession immediately, without opposition from the holder of the legal title, and is rendered nearly irresistible by a continued and undisturbed occupancy, without payment of rent, or other acknowledgment of superior right, for a long time. . . . Presumptions are in favor of the legal title when neither party is in possession, but when the *cestui que trust* occupies the land, they are wholly against the trustee."

[The defendants upon argument invoked the act of April 22, 1856—limitations—as a bar to this suit, in part, at least. But here, again, the master believes that the fact of possession is conclusive.] "A case is not within the words of the statute when the *cestui que trust* has possession and occupancy, when the statute is running. If the statute had begun to run, this would stop it. If possession preceded the trust relation, it would not begin to run." Clark v. Trindle, 52 Pa. 492; Williard v. Williard, 56 Pa. 119.

[The master is therefore of opinion that the surviving executors of Josiah Jackson are entitled to a conveyance of one undivided third, and Emily L. Patrick (now a widow, assignee of B. Rush Jackson) to one undivided third, of the 102 acres, 70 perches, as described in the original bill of complaint in this case.]

Numerous exceptions were filed to the master's report, setting

forth, *inter alia,* the portions of his report inclosed in brackets. On the hearing of such exceptions the following opinion and decree were delivered by Morrow, P. J.:

The undisputed evidence is that Josiah Jackson and his sons, George D. and B. Rush Jackson, did business for many years at Dushore, Sullivan county, in the firm name of "Jackson & Sons," and until the death of Josiah Jackson, April 9, 1867. His sons continued in business as "Jackson Brothers" until the death of George, November 23, 1879.

The land in suit—102 acres and 70 perches—is a part of a larger tract of 523 acres and 110 perches, in Cherry township, Sullivan county—an undivided half part or moiety of which, Michael Meylert, in the year 1859, conveyed to George D. Jackson, and on the 6th day of July, 1861, George D. Jackson executed a writing in which he declared that he held the undivided half as follows: one third for his father, one third for his brother, and the remaining third for himself. This declaration of trust was found in the safe of Jackson Brothers after George's death, among his private papers.

Three and one half seventeenths of the same tract were conveyed to George D. Jackson, September 20, 1866, by Francis Jordan and others, and on the 22d of the same month, M. C. Mercur and Charles F. Welles, Jr., conveyed to him 5½ seventeenths of the 102 acres and 70 perches—the land in question. On the 24th of the following October (1866) George D. Jackson conveyed 11½ seventeenths of 421 acres and 40 perches— all of the tract of 523 acres and 110 perches, except the 102 acres and 70 perches just mentioned—to the Sullivan & Erie Coal & Railroad Company. This left the title to 102 acres and 70 perches in George D. Jackson. It is averred in the bill that he held this title in trust for the equal benefit of his father, brother, and himself. The defendants claim that he owned the land absolutely, and free and discharged from all trust.

[From the testimony taken under these allegations, the master has substantially found as follows:

1. That the declaration of trust has neither been terminated nor surrendered.

2. That the consideration for the 3½ seventeenths of the entire tract, and also the consideration for the 5½ seventeenths of the 102 acres and 70 perches were paid from lands held by Jack-

son & Sons at the time when George D. Jackson took the title to the second half of the 102 acres and 70 perches.

3. That Jackson & Sons and Jackson & Brothers were in joint possession of this land—opened a coal mine on it—mined and sold coal for their joint benefit.

4. That George D. Jackson admitted to different persons at or near the mine, and elsewhere, that the land belonged to Jackson & Sons, and that he entered on the books of both firms charges and accounts of coal taken and sold from this land.

The master found there was a resulting trust, and recommends a decree that one undivided third be conveyed to the executors of Josiah Jackson, and another third to Mrs. Patrick, assignee of B. Rush Jackson.

To this report the defendants have taken exceptions, and say the master erred in not finding that the declaration of trust had been terminated and surrendered. They also say that the evidence was not sufficient to warrant the master in finding that the consideration was paid by Jackson & Sons at the time the second half of the 102 acres was conveyed to George D. Jackson, and that all the evidence is not so clear, explicit, and unequivocal as to establish a resulting trust.

I have examined the evidence with some care and think it fully warrants the findings.]

[There is no question but that a resulting trust may be proved by parol. It is true that the evidence must be clear, explicit, and unequivocal. Is it not so here? "A fourfold cord is not easily broken;" payment of the purchase money by the *cestui que trust,* possession, improvements, declarations of the alleged trustee that he held the land for Jackson & Sons, and finally, all participating in the coal sold. Add to this the fact that he held one half of the land in trust, as by the declaration of trust, when he took the conveyance of the second half, and a resulting trust seems to be the inevitable conclusion.]

[The statute of limitations is no bar, for the *cestuis que trust* were in possession.]

Clark v. Trindle, 52 Pa. 492; Williard v. Williard, 56 Pa. 119.

We see no error, therefore, in the conclusion reached by the master. It is not necessary to notice the exceptions in detail. They are dismissed except so far as sustained here. Let the proper decree be prepared.

[And now, to wit, February 1, 1886, this cause came on to be heard upon the master's report and exceptions thereto, and was argued by counsel for the respective parties; and, therefore, upon consideration it is ordered, adjudged, and decreed—

1. That Bernice W. Jackson and George C. Jackson, executrix and executor of George D. Jackson, deceased, convey by good and sufficient deed in fee simple to James Thomson and B. Rush Jackson, deceased, an undivided 1/3 interest in the 102 acres and 70 perches of land described in the plaintiffs' bill of complaint.

2. That the said Bernice W. Jackson and George C. Jackson, executrix and executor of George D. Jackson, deceased, convey by good and sufficient deed in fee simple to Emily L. Patrick, assignee of B. Rush Jackson, an undivided 1/3 interest in the said 102 acres and 70 perches of land described in the plaintiffs' bill of complaint, and the said Bernice W. Jackson and the said George C. Jackson, executrix and executor as aforesaid, are hereby ordered and enjoined to execute and deliver to the said James Thomson and B. Rush Jackson, executors as aforesaid, and to the said Emily L. Patrick, assignee of B. Rush Jackson, respectively, good and sufficient deeds in fee simple as aforesaid for their respective and undivided 1/3 interests in said land as aforesaid within ninety days from the date of this decree.]

[And it is further ordered, adjudged, and decreed that the defendants in the said bill of complaint pay the costs, the master's fees and expenses to be paid in the first instance by the plaintiffs in the bill, with recourse over against the defendants upon the determination of this cause.]

This appeal was taken by defendants. The assignments of error, *inter alia,* specified the action of the court in dismissing the exceptions to those portions of the master's report inclosed in brackets; the portions of the opinion of the court inclosed in brackets; the action of the court in overruling the demurrer to the bill and in entering the decree.

*Edward Overton, Jr., John F. Sanderson,* and *Rodney A. Mercur,* for appellants.—This is an equitable bill, and should be dismissed as such, the resulting trust thereby sought to be enforced being the proper subject only of an ejectment. The court will not entertain a mere ejectment bill. Kennedy's Appeal, 81* Pa. 163; Messimer's Appeal, 92 Pa. 168, and Long's Appeal,

92 Pa. 171; Barclay's Appeal, 93 Pa. 50; Richard's Appeal, 100 Pa. 51; Phipps v. Kent, 1 Chester Co. Rep. 158, and Boyd v. Reid, 1 Chester Co. Rep. 191.

In this state the resulting trust must be enforced by ejectment. Lynch v. Cox, 23 Pa. 265.

Resulting trust enforced by ejectment. Hall v. Vanness, 49 Pa. 457; Harrold v. Lane, 53 Pa. 269; Williard v. Williard, 56 Pa. 119; Best v. Campbell, 62 Pa. 477; McGinity v. McGinity, 63 Pa. 38; Farrell v. Lloyd, 69 Pa. 239, and Cook v. Cook, 69 Pa. 443; McLaughlin v. Fulton, 104 Pa. 161.

Where rights which are legal are asserted on one side and denied on the other, the remedies are at law. They cannot be settled under equity forms.

In actions respecting real property, therefore, if there be equitable ground of relief involved, the rights of the parties must be determined at law. Washburn's Appeal, 105 Pa. 482.

This is because the right of trial by jury ought not to be taken away when the injury complained of could be redressed by it. Clark's Appeal, 62 Pa. 447; Norris's Appeal, 64 Pa. 275; Tillmes v. Marsh, 67 Pa. 507; Haines's Appeal, 73 Pa. 169.

The growing disposition of the bar and the lower courts to bring and entertain cases on the equity side which are properly sustainable at law is met by a firm holding by the supreme court to the true jurisdiction, as that court, in view of its constitution and the pressure of business upon it, must avoid questions of fact and confine itself as far as possible to revision of errors of law. Frisbee's Appeal, 88 Pa. 146; Christie's Appeal, 85 Pa. 463; Grubb's Appeal, 90 Pa. 228; Long's Appeal, 92 Pa. 171; Richard's Appeal, 100 Pa. 51.

The court of common pleas of Bradford county ought not to entertain a bill the sole purpose of which is to try the title to lands situate in another county. Morris v. Remington, 1 Pars. Sel. Eq. Cas. 387; Thompson v. Noble, 3 Pittsb. 201.

A trust must result, if at all, at the instant the deed is taken, and when the legal title vests in the grantee. No oral agreements and no payments before or after the title is taken will create a resulting trust. 1 Perry, Tr. § 133; Barnet v. Dougherty, 32 Pa. 371; Nixon's Appeal, 63 Pa. 279; Bickel's Appeal, 86 Pa. 204; Stafford v. Wheeler, 93 Pa. 462; Cross's Appeal, 97 Pa. 471; Salter v. Bird, 103 Pa. 447; McLaughlin v. Fulton, 104 Pa. 170; Fricke v. Magee, 10 W. N. C. 50.

If two agree to purchase and one furnishes all the money and takes the title to himself, no trust results to the other. 1 Perry, Tr. § 133; Edwards v. Edwards, 39 Pa. 369.

A person claiming a resulting trust must show that he paid some specific sum for some distinct interest in or aliquot part of the estate, as for a specific share, as a half, or a quarter, or other particular fraction of the whole. 1 Perry, Tr. § 132.

One who undertakes to establish a resulting trust by parol evidence takes the burden of proof on himself. Strimpfler v. Roberts, 18 Pa. 298, 57 Am. Dec. 606.

A resulting trust must be proved with great clearness and certainty. 1 Perry, Tr. § 137.

A resulting trust may be proved by oral testimony; but the evidence ought to be clear, explicit, and unequivocal. Earnest's Appeal, 106 Pa. 319; Kistler's Appeal, 73 Pa. 400; McGinity v. McGinity, 63 Pa. 38.

Evidence must be clear and unequivocal. Nixon's Appeal, 63 Pa. 279.

It must be clear and satisfactory. Lingenfelter v. Richey, 62 Pa. 128.

It must be clear and explicit. Cowden v. Oyster, 50 Pa. 373.

It must be clearly proved. Bennett v. Fulmer, 49 Pa. 163.

It should be full, clear, and convincing. Buchanan v. Streeper, 11 W. N. C. 435.

It must be full, clear, and satisfactory. Capehart v. Capehart, 2 Phila. 134.

*W. H. Jessup* and *William Foyle, Rush J. Thompson,* and *Davies & Hall,* for appellees.—The fact that the land which may be affected by the decree lies in another county is no valid objection to the jurisdiction. Bispham, Eq. 65; Wilcocks v. Wilcocks, 2 Vern. 558; 2 Lead. Cas. Eq. 345; Penn v. Baltimore, 1 Ves. Sr. 444.

So a trustee residing in one state may be compelled to make a conveyance of real estate situated in another. Vaughan v. Barclay, 6 Whart. 392; Massie v. Watts, 6 Cranch, 148, 3 L. ed. 182; Arglasse v. Muschamp, 1 Vern. 75; Toller v. Carteret, 2 Vern. 494; Morris v. Remington, 1 Pars. Sel. Eq. Cas. 387; Derby v. Athol, 1 Ves. Sr. 202; Story, Eq. § 1296; Muller v. Dows, 94 U. S. 444, 24 L. ed. 207.

Ejectment is a possessory action. One in possession cannot

bring ejectment. Lynch v. Cox, 23 Pa. 268; Edwards v. Edwards, 39 Pa. 369; Long v. Perdue, 83 Pa. 214; Washburn's Appeal, 105 Pa. 482.

If, as to part of the property, ejectment might afford an adequate remedy, still the appellees could not be compelled to split up their claim. Socher's Appeal, 14 W. N. C. 383.

So also when equity takes cognizance of a litigation, it will dispose of every subject embraced within the circle of contest, whether the question be of remedy or of distinct yet connected topics of dispute. McGowin v. Remington, 12 Pa. 63, 51 Am. Dec. 584; Allison's Appeal, 77 Pa. 221; Souder's Appeal, 57 Pa. 498; Wilhelm's Appeal, 79 Pa. 120; McElrath v. Pittsburg & S. R. Co. 68 Pa. 37.

There was no evidence which proved any surrender of the declaration of trust, nor any declarations of the parties that it had been so surrendered. The master has found as a fact that this declaration of trust was never surrendered or annulled.

"The finding of facts by a master sustained by the approval of the court below will not be set aside, except for plain error." Kisor's Appeal, 62 Pa. 435; Thompson's Appeal, 41 Phila. Leg. Int. 24.

PER CURIAM:

An examination of all the numerous assignments discloses no error which demands a reversal of this decree. The demurrer was properly overruled. The jurisdiction of the court cannot be successfully questioned. As to an undivided one half of the land, the trust was proved by the written instrument. The trust as to the other half was proved by oral testimony, but by evidence so clear, explicit, and unequivocal as to justify the master and the court in finding that a resulting trust was established.

Decree affirmed and appeal dismissed, at the costs of the appellants.