# Gates *v.* Keichline, Appellant.

*Trusts and trustees — Parol trust — Evidence — Purchasing at sheriff's sale for another—Principal and agent—Tax assessments —Possession—Declarations.*

1. A parol trust will be established where the evidence to support it is so clear, precise, convincing and satisfactory that it will satisfy the mind and conscience of a court sitting as a chancellor reviewing the testimony.

2. In a proceeding to establish a parol trust in land, the trust will be established against defendant where the evidence shows that the property was purchased at sheriff's sale by defendant for

his sister with money advanced to her from him, but which was subsequently repaid, that there was an agreement between them at the time of the sale that he would in this manner purchase the property on her account, and that at this period he was acting generally as agent for her affairs.

3. In such case, the fact that the proofs relied on by plaintiff consisted largely of declarations made by defendant, after he acquired title, is a circumstance to be considered by the jury, but it neither rendered such proofs incompetent nor the body of the evidence legally insufficient to sustain the findings in plaintiff's favor.

4. Oral declarations of an alleged trustee may be relied upon to prove payment of the purchase money by or on account of the cestui que trust.

5. While the law contemplates the payment of purchase money by the beneficiary at the time of the creation of the trust, yet the funds may be advanced by another on his account, and this other may be the trustee himself, where the payment is made under an arrangement by which the money advanced is to be repaid; particularly is this true if the person in whose name title is taken acts at the time as agent of the claimant.

6. A tax assessment in the name of a person claimed to be a cestui que trust, and a long continued possession of, and exercise of dominion over, the land by such person, are evidential facts to sustain the alleged trust.

7. In such case, the fact that certain leases were made in the name of the defendant as lessor, is for the consideration of the jury, but is not controlling, where it appears that defendant was acting as agent generally for the cestui que trust.

*Appeals—Assignment of error—Answers to points—Charge—Exceptions—Acts of April 22, 1905, P. L. 286, and May 11, 1911, P. L. 279—Rule 24.*

8. Assignments of error to answers to points and to portions of charge will not be considered where they show no exceptions to the instructions complained of, as required by Rule 24.

9. The Act of May 11, 1911, section 6, P. L. 279, applies only to final orders or rulings in the nature thereof.

10. Where a defendant moves for a new trial and for judgment n. o. v., and the court refuses a new trial, but does not pass on the motion for judgment, and subsequently judgment is entered for plaintiff, an assignment of error to the refusal of judgment n. o. v. will be treated by the appellate court as though it showed an order disposing formally of the motion for judgment n. o. v. and as complaining of the final judgment.

11. The Act of April 22, 1905, P. L. 286, regulating practice on such motions, provides that, if the court below does not grant a new trial, it shall be its duty "to enter such judgment as should have been entered on the evidence."

Argued February 2, 1925. Appeal, No. 120, Jan. T., 1925, by defendant, from judgment of C. P. Centre Co., Dec. T., 1922, No. 123, on verdict for plaintiff, in case of Mary G. Gates v. John M. Keichline. Before MOSCH-ZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Issue, under Act of June 10, 1893, P. L. 415, to determine title to real estate. Before QUIGLEY, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were various instructions, and refusal of defendant's motion for judgment n. o. v., quoting record.

*Ellis L. Orvis*, with him *W. D. Zerby*, for appellant.— The appellee failed to prove a resulting trust: Barnet v. Dougherty, 32 Pa. 371; Nixon's App., 63 Pa. 279; Kellum v. Smith, 33 Pa. 158; Lancaster Trust Co. v. Long, 220 Pa. 499; Meredith v. Bank, 275 Pa. 314; Story v. Lonabaugh, 247 Pa. 331; Bryan v. Douds, 213 Pa. 221.

Assessment of the farm in the name of Sarah Gardner is insufficient to show title in her: Irwin v. Patchen, 164 Pa. 51; Green v. Schrack, 16 Pa. Superior Ct. 26; James v. Bream, 263 Pa. 305.

The court erred in denying defendant's motion for judgment non obstante veredicto: Fidelity Ins., etc., Co. v. Moore, 194 Pa. 617.

*N. B. Spangler*, with him *Ivan Walker*, for appellee. —Resulting trusts as to land may be established by pa-

rol and may be enforced by ejectment: Lynch v. Cox, 23 Pa. 265; Galbraith v. Galbraith, 190 Pa. 225.

The acknowledgment of a trust at any time amounts to a confession, and may be given in evidence: Willard v. Willard, 56 Pa. 119.

Payment of purchase money by a cestui que trust is evidence of the trust: Kauffman, 266 Pa. 270; Gilchrist v. Brown, 165 Pa 275; Schrager v. Cool, 221 Pa. 622; Harrison v. Soles, 6 Pa. 393; Barnet v. Dougherty, 32 Pa. 371; Wolford v. Herrington, 86 Pa. 39, 44; Lancaster Trust Co. v. Long, 220 Pa. 499, 502; Storey v. Lonabaugh, 247 Pa. 331.

Possession by a cestui que trust, is adverse to the trustee: Lynch v. Cox, 23 Pa. 265; Clark v. Trindle, 52 Pa. 492; Willard v. Willard, 56 Pa. 126; Douglass v. Lucas, 63 Pa. 9; Miller v. Baker, 160 Pa. 172.

The offer of plaintiff of the assessment in the name of Sarah Gardner for many years, while not proof of title to the land, is evidence of possession by her and of her claim: Irwin v. Patchen, 164 Pa. 51; Miller v. Baker, 160 Pa. 172.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, March 16, 1925:

In this action of ejectment, Mary G. Gates, plaintiff, recovered a verdict on which judgment was entered; defendant has appealed.

Wilson Gardner owned the farm in controversy, subject to certain mortgages and judgments; August 25, 1894, it was sold at sheriff's sale on a fi. fa. issued upon one of the judgments, and was purchased in the name of defendant, who subsequently took title from the sheriff. Gardner died intestate May 16, 1896, and his wife, Sarah Gardner, died testate April 1, 1922, leaving her real estate to her children, including Mrs. Gates, to whom, prior to the institution of the present suit, her cotenants conveyed their shares, thus vesting in her the whole of the mother's real property. She claims the

property in controversy on the theory that defendant, acting as agent for Sarah Gardner, his sister, purchased it at the sheriff's sale and held the legal title thereto in trust for her. On the other hand, defendant contends that he bought the farm for himself, and was at all times willing, while his sister lived, to transfer it to her upon the settlement of certain accounts between them, but that he was under no legal obligation to do so; in short, defendant, claiming to be owner in fee, denies that plaintiff has any right, title or interest in the property.

The issues involved were submitted to a jury, which was specifically told: If "from all the evidence in the case," it believed there was a distinct understanding between defendant and Sarah Gardner at the time of the sheriff's sale, that the property was to be purchased by him and held in trust for her, that it was "to be paid for with her funds, and that she did pay for the same,— although such payment may have been temporarily deferred,"—then a trust resulted in her favor. Hence the verdict, though a general one, must be viewed as comprehending conclusions of fact that the property was bought in by defendant, representing Sarah Gardner, under an agreement that the purchase money was paid on her account, to be refunded to him subsequently; and these conclusions sustain the plaintiff's case.

Defendant contends that (1) the primary proofs do not warrant the underlying findings of fact essential to support the above-stated conclusions; (2) even if treated as found, the evidential facts depended on for the purpose do not justify the above conclusions; and (3) under the Statute of Frauds, section 4 of the Act of April 22, 1856, P. L. 532, the evidence as a whole is legally insufficient to prove a trust. None of these contentions can we sustain.

In Bigley v. Jones, 114 Pa. 510, 517, we said that, to establish a trust by parol, "the evidence must be full, clear and convincing," and in Olinger v. Shultz, 183 Pa. 469, 474-5, that it must be sufficiently "clear, precise,

convincing and satisfactory" to "satisfy the mind and
conscience of a court sitting as a chancellor reviewing
the testimony."  After reading the present record, we
cannot say that plaintiff did not meet this burden.
That the evidence satisfied the conscience of the court
below is apparent from the refusal of a new trial and
from the entry of the judgment now before us; and,
despite the elaborate argument of counsel for appellant,
we are unconvinced of either the evidential weakness or
the legal insufficiency of the proofs relied on by appel-
lee.

The proofs we have in mind are as follows: Defend-
ant, who is an attorney-at-law, rendered several accounts
to Sarah Gardner during her life; these accounts begin
with items bearing date prior to the sheriff's sale, and
indicate that he was then acting as her agent, and con-
tinued to act in that capacity till her decease; they
contain a small annual charge for services rendered by
defendant to his client; defendant likewise charges
therein an item of $31.66, paid to the sheriff in August,
1894, immediately after the sale of the real estate in con-
troversy; and the return made by the sheriff, which was
also offered in evidence, shows conclusively that $5 of
this amount represents the full purchase price of the
property (subject to encumbrances); directly after this
item, defendant charges Mrs. Gardner with interest
from the date of the payment in 1894 to July 1, 1896,
when the latter paid to the former $900 in cash, a sum
which she had received from insurance on her husband's
life.

Speaking generally, defendant's accounts indicate
that he was managing Mrs. Gardner's affairs, and treated
the proceeds of the farm as though the property belonged
to her and not to him.  More specifically, the item cover-
ing the purchase price of the property here involved, and
the one immediately thereafter, covering the interest on
the first item, plainly indicate that defendant treated
the purchase money as an amount advanced on his sis-

ter's account, to be repaid him; and on which he therefore charged her interest from date of payment to date of settlement.

In addition to the above evidence of defendant's agency and of his payment of the purchase money for his constituent, there was introduced in evidence a series of written declarations, contained in letters written by defendant to Mrs. Gardner and to her children, wherein he repeatedly refers to the farm and the landlord's share of the crops raised on it as belonging to her, using in the letters to his principal such terms as "your farm" and "your rents," and in the letters to one of her sons, who was the tenant on the farm, terms like "your mother's share of corn" and "her corn and oats," and telling the son that his lease could be renewed "if it is satisfactory to her for you to stay." Moreover, a number of witnesses testified that Sarah Gardner lived on the premises in controversy from the time of the sheriff's sale until the date of her death, and farmed it for several of those years; that, when it was rented, she received the landlord's share of the crops and continued to occupy part of the property; that, from two years after the sheriff's sale, until the time of her death, the property was assessed for taxation in her name; finally, and comprehensively, that during all this time, she and the others concerned, including defendant, always treated the property as belonging to her.

Of course there was opposing evidence, and appellant contends that inferences other than those referred to as favoring plaintiff should have been drawn from the documentary proofs we have mentioned, but, taking the evidence as a whole, it is sufficient to warrant the verdict for plaintiff, comprehending, as the decision of the jury does, the specific findings that the property was purchased by defendant for Sarah Gardner, with money advanced to her by him, but which was subsequently repaid; and that there was an agreement between them at the time of the sheriff's sale that he would in this man-

ner purchase the property on her account. These findings, under our authorities, are sufficient to sustain the verdict: Lloyd v. Carter, 17 Pa. 216, 219, 221; Jackson v. Jackson, 6 Sadler 42, 48, 53, 59; Lynch v. Cox, 23 Pa. 265, 269; Gilchrist v. Brown, 165 Pa. 275, 283; and other cases, infra. We take occasion to state, however, that none of these cases, or of those about to be mentioned, are so like the one at bar that they can be cited as ruling authorities; in some of them the alleged trust was upheld and in others it was not, but all of them contain, at the designated pages, statements of principles here applied,—hence their use.

The fact that the proofs relied on by plaintiff consist largely of declarations made by defendant, after he acquired title, was a circumstance to be considered by the jury, but it neither rendered those proofs incompetent nor the body of the evidence legally insufficient to sustain the findings in plaintiff's favor.

In McCloskey v. McCloskey, 205 Pa. 493, 496, and in other cases, we have stated that "nothing......said by a grantee [after acquiring title] will turn an estate that had passed [to him] absolutely......into a trust for others"; but this is far from saying that what occurred at the time of acquiring title cannot be proved by subsequent declarations of the grantee. On the contrary, our cases hold that oral declarations by a purchaser upon whom it is sought to fix a trust, which tend to show acknowledgments of the trust, are admissible in evidence for that purpose, albeit made after the date of the conveyance to him: Gregory v. Setter, 1 Dallas 204 or 193*; Sampson v. Sampson, 4 S. & R. 329, 330; Lloyd. v. Carter, 17 Pa. 216, 219, 221; Jackson v. Jackson, 6 Sadler 42, 48, 59; Kisler v. Kisler, 2 Watts 323, 326; Williard v. Williard, 56 Pa. 119, 124, 125; Behm v. Molly, 133 Pa. 614, 616-17, 627; Casciola v. Donatelli, 218 Pa. 624, 630, 631. A trust for real estate cannot be established by mere parol acknowledgments of its existence (Sample v. Coulson, 9 W. & S. 62, 66; Blyholder v. Gil-

son, 18 Pa. 134, 137), but such declarations are admissible to show, with other evidence in the case, that a trust relationship was in fact intended to be established at the time the title was acquired.

The oral declarations of the alleged trustee may also be relied upon to prove payment of purchase money by or on account of the cestui que trust (Gregory v. Setter, 1 Dallas 204 or 193*), and when evidence appears from which there can be made a finding of such payment by the beneficiary, this establishes the trust prima facie: Lynch v. Cox, 23 Pa. 265, 268, 269.

While the law contemplates payment of the purchase money by the beneficiary at the time of the creation of the trust, yet the funds may be advanced by another on his account (Kauffman v. Kauffman, 266 Pa. 270, 276), and this other may be the trustee himself where, as in the present case, the payment is made under an arrangement which contemplates the refunding of the amount advanced, in a subsequent accounting between the trustee and his cestui que trust; particularly is this true if, as here, the person in whose name title is taken acts at the time as agent for the claimant: Cook v. Cook, 69 Pa. 443, 447-8; Schrager v. Cool, 221 Pa. 622, 625. There are cases in which the trustee agreed at the time of acquiring title that the one for whom he was to hold should refund the purchase money to him in installments, and the trust was sustained: Gilchrist v. Brown, 165 Pa. 275, 283; Kauffman v. Kauffman, 266 Pa. 274, 275, 276.

The tax assessment in Mrs. Gardner's name (Miller v. Baker, 160 Pa. 172, 179; Irwin v. Patchen, 164 Pa. 51, 71; James v. Bream, 263 Pa. 305, 308) and the long-continued possession of, and exercise of dominion over, the land by her, are all evidential facts to sustain the alleged trust: Jackson v. Jackson, 6 Sadler 42, 53, 59; Lynch v. Cox, 23 Pa. 265, 269, 270.

The fact that certain leases were made in the name of defendant, as lessor, was for consideration by the jury,

but was not controlling; as said in Olinger v. Schultz, 183 Pa. 469, 479, referring to a similar circumstance in a case of like character, the fact was "susceptible of explanation, and such explanation was given." Defendant held the legal title and was attending to Mrs. Gardner's business affairs, connected with the farm, which is sufficient explanation in itself; though other facts placed in evidence also tended to explain the leases in question.

We shall not pass specifically on the several assignments of error, for none is in proper form. All save the last of them complain of answers to points for charge or of excerpts from the charge itself, but they show no exceptions to the instructions complained of. Rule 24 of this court states expressly that in such instances the assignment must show the exception taken in the court below. True, section 6 of the Act of May 11, 1911, P. L. 279, provides that "when a decision appears of record, an exception is not necessary"; but, construing this act, we have repeatedly decided that it applies only to final orders or rulings in the nature thereof: Com. v. Bonnor, 238 Pa. 339, 340; Foley v. P. R. T. Co., 240 Pa. 169, 172; Kane, etc., Co. v. Pittsburgh, etc., Co., 241 Pa. 608, 616; Pfaff v. Bacon, 249 Pa. 297, 301. Originally, the office of an exception was to bring the matter questioned formally on the record, in order that it might subsequently be incorporated in a bill of exceptions, for use on review; because, in those times, stenographic records were not kept. To-day, however the purpose of an exception is to give formal notice that the exceptant does not acquiesce in the ruling of the court and intends again to claim the benefit of the objection or request which the court has overruled or denied; hence the rule that the exception must appear in the assignment, which, as said in Foley v. P. R. T. Co., supra, at p. 172, "is in effect merely the application of the principle that appellate courts will not review matters not called to the attention of the trial court, unless the alleged errors are basic and

fundamental." We there add that "the upholding of this principle is essential to the proper and orderly administration of the law." All of this is noted to emphasize the importance of complying with the rule of court. Here, by examining the record, we find that exceptions were in fact taken, and, had they appeared as required, we might have felt called on to discuss several of the assignments which complain of trial error; as it is, however, we simply state that, after looking at all of them, we discover no faults requiring reversal of the judgment.

The purpose of the last specification of error is to criticise the court below for refusing to enter judgment n. o. v. in favor of defendant. The principal points argued under this assignment have been passed upon, but it may be noted that the order which defendant quotes therein, as disposing of his motion for judgment, appears to dispose only of his rule for a new trial. The Act of April 22, 1905, regulating practice on such motions, provides that, if the court below does not grant a new trial, it shall be its duty "to enter such judgment as should have been entered upon the evidence"; it further provides that, "from the judgment thus entered either party may appeal." Since, subsequent to the motion for judgment n. o. v., a judgment was in fact entered for plaintiff, we shall treat the assignment under consideration as though it showed an order disposing formally of defendant's motion for judgment n. o. v., and as complaining of the final judgment; on that theory we have reviewed the case and shall dismiss the motion to quash the appeal.

The judgment is affirmed.