# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## R. A. Zimmerman, Appellant, v. Pardon T. Barber.

176
37SC 1358

*Trusts and trustees—Resulting trust—Presumption—Evidence.*

Where the consideration is paid by one and the conveyance of the land is made to another the presumption that the latter holds the title in trust for the former is not conclusive, but may be rebutted by proof that it is at variance with the mutual intention, or understanding of the parties; and any circumstance which throws light on the transaction or explains its true character is admissible for the purpose of strengthening or rebutting it.

A decedent in his lifetime conveyed a tract of land to one of his sons, taking judgments against the son to secure the purchase money. After the decedent's death execution was issued on a junior judgment against the son, and the property worth about $1,000 was levied on. P., another of the decedent's sons paid the executor $200, and with this sum the executor bought in the property, taking title to himself as executor. Shortly after this, P. entered into possession of the land. Ten years after decedent's death and seven years after the executor received a deed for the property, the executor sold it at public sale for $50.00 to S., who conveyed it to plaintiff. In an action of ejectment against P., *held*, (1) that there could be no resulting trust in favor of P. for more than a one fifth interest in the land, and whether he acquired any claim upon or interest in it, except as heir or creditor, depended upon the intention with which the money was furnished; (2) that it was for the jury to determine with what intention the land was bought, and the purchase money furnished; (3) that it was competent for either party to show the assets and liabilities of the estate of the decedent at the time of the sale, and subsequent conversations between the executor and P. in reference to the transaction consummated by the sale; (4) that these matters were proper for the consideration

VOL. CLXXVI—1                                                    (1)

of the jury in determining whether it was the intention of the parties that the executor should receive and hold the title to the land as trustee for the heirs, or for the benefit of the estate; (5) that the delay and manner of making the sale by the executor being inconsistent with the existence of any valid claim against the estate and it not appearing that any heir or creditor demanded the sale, and as the heirs, who were the only ones apparently interested in it, were not consulted, it is for the court and jury to consider and determine whether in any aspect of the case the sale by the executor to S. divested the interest of the heirs or of the estate.

Argued Feb. 28, 1896.   Appeal, No. 198, Jan. T., 1896, by plaintiff, from judgment of C. P. Lackawanna Co., Nov. T., 1892, No. 131, on verdict for defendant.   Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ.   Reversed.

Ejectment for a tract of land in Benton township.   Before GUNSTER, J.

At the trial the following facts appeared from the evidence:

On the 24th day of April, A. D. 1868, Williams Barber conveyed to Ira T. Barber, his son, in fee, inter alia the piece of land in dispute in this case for the sum of $1,437, and took, as security for part of the purchase money, three several judgment notes, amounting in all to $1,058.58;. upon which judgments were severally entered.

On the 15th day of May, 1875, the said Williams Barber died testate, having appointed Coleman Wells his sole executor.

By the terms of the said will the whole estate of the decedent was bequeathed to his widow, Mary M. Barber, during her natural life, and after her death to be divided among his children, share and share alike.

The estate of said Williams Barber consisted exclusively of personal property, the largest portion of which were the judgments against Ira T. Barber aforesaid.

The said Williams Barber left to survive him a widow, Mary M. Barber, and eight children, viz: William Barber, Pardon T. Barber, George F. Barber, Ira T. Barber, Marvin Barber, Clarenda Barber, then intermarried with Ezekiel Gumaer, Mary L. Barber, intermarried with Levi Gumaer, Esther Jane Barber, intermarried with William W. Wallace.

In 1877, Ira T. Barber became financially embarrassed and, on the 8th day of September, 1877, his real estate, a portion of which was the piece of land in dispute in this case, was adver-

tised for sale by the sheriff of Luzerne county, upon a judgment held by one Sidney Finn. At this time the judgments held by Coleman Wells, executor of the estate of Williams Barber, against Ira T. Barber, amounting to $1,654.77, were first liens against Ira T. Barber's real estate. Coleman Wells, the executor in order to protect the judgments which he held, was obliged to become the purchaser of the real estate, paying therefor the sum of $201.56, being the amount of costs on the Finn judgment, but, not having any money in his hands belonging to the estate, with which to make the payment, he borrowed the sum of $201.56 from Pardon T. Barber, one of the heirs, and gave him a receipt or certificate to that effect, a copy of which is as follows:

Luzerne County, ss: Sidney Finn vs. Ira T. Barber. No. 449 October Term, 1876. Pluries Vend. Ex. No. 859 September T., 1877.

Real estate sale on 8th September, 1877, by Wm. P. Kirkendall, sheriff, of defendant's property in Benton township, Luzerne county, Pa., to Coleman Wells, executor of Williams Barber, deceased, for two hundred dollars, deed to be made to Coleman Wells, executor, &c., money receipted on said writ by the sheriff as paid by me.

Now, this is to certify that the purchase money mentioned and receipted on writ, together with one dollar and fifty-six cents additional for costs, in all $201.56, was furnished me by Pardon T. Barber solely, and was and is not the property of myself or of the estate of Williams Barber.

In presence of                                        COLEMAN WELLS.

O. F. NICHOLSON.

Wilkes-Barre, Pa., 8 Sept., 1877.

The sheriff's deed was made to Coleman Wells, executor of Williams Barber, deceased, on the 24th day of September, 1877, and duly acknowledged according to law.

The widow and the greater number of the heirs reside in Benton township, near the land. Pardon T. Barber, sometime after the sale, took possession of the land, the use of which belonged to the widow, who had a life interest in the whole estate, and remained in possession until the death of the widow.

On the 7th day of April, 1885, without any order of the

orphans' court, Coleman Wells, the executor, exposed the land at public sale.

The heirs were then at swords' points with one another. The boys claimed that the property belonged to Pardon, to whom several of them had sold their interest. The girls claimed it belonged to the estate. On the day of the sale Pardon T. Barber appeared and claimed to be the owner of the land, because he had paid all the purchase money. It was also claimed by Charles H. Soper, attorney for the boys, that the property could not be sold because no order of the orphans' court had been obtained. He further objected because the boys did not want the money to go into the hands of Coleman Wells. In addition to the oral notices above mentioned, Mr. Soper read a written notice, under which he claimed the property belonged to Pardon T. Barber and the other heirs of Williams Barber.

The girls and George F. Barber, who was not present at the sale, were not opposed to the sale, but, on the contrary, two of the girls Mary L. Gumaer and Esther J. Wallace desired that the land be sold by the executor and the surplus, after the payment of costs and debts, be divided among the heirs. Consequently, at the time of the sale, three of the heirs made no claim of title, one other became a bidder at the sale, and a son of one of the consenting heirs became a purchaser of one piece of land, and S. J. Strauss, an attorney at Wilkes-Barre, Pa., purchased the other piece.

By reason of this want of harmony among the heirs, and the threatened cloud on the title that would result, the properties were struck down for less than their real value.

R. A. Zimmerman, the plaintiff in this case, purchased the interest of Mr. Strauss in the piece of land in dispute.

When William Gumaer was on the stand, plaintiff offered to prove by him that in conversation with Pardon Barber and Coleman Wells, executor of the estate of Williams Barber, Pardon Barber demanded that the $200 he had advanced for the purchase of the property at Wilkes-Barre be paid to him by Coleman Wells; Wells stated that he would pay the money as soon as he could turn the property into cash. This offer was objected to as immaterial and irrelevant, and the objection was overruled.

By Mr. Watson, for plaintiff: Q. Did you meet Pardon Bar-

ber and Coleman Wells at any time after the sheriff's sale at Wilkes-Barre together? A. I met them there at Coleman's house. Q. At what time was that? A. It was after the sale, quite a bit; couldn't tell exactly just now. Q. What sale? A. The sale at Wilkes-Barre. Q. Did you have any conversation with them, or hear them in conversation? A. Did I have any conversation with them? Q. Yes? A. Not any particular. The conversation that they had was concerning the money that he owed to Pardon. Q. Who owed? A. Coleman Wells. He borrowed money at Wilkes-Barre to hold this property. Q. Who said that? A. Coleman Wells. Q. What did Barber say? A. Barber said he ought to have a deed for it. Q. For the property? A. For the property. Q. What did Wells say? A. Wells said, " I can't give you a deed because I want to save it for the heirs, and the old lady had to have her interest out of it." Q. Then what did Wells say, or Barber? A. Barber said he either ought to have his money or the land, and Coleman says, " I will pay the money back after the old lady gets done with it." Q. What else was said? A. He said that when he sold the property, after the old lady's death, when he sold the property he would furnish that money back. Q. You have stated this was at Wells's house? A. This was at Wells's, near Wells's house. It wasn't in the house. Q. Do you remember the time? A. It was after the sale, I don't remember the time to a day. Q. About how long, could you give us an idea? A. Oh, it might have been two weeks, or it might have been a month. It was a short time after the sale. Q. At Wilkes-Barre? A. At Wilkes-Barre.

On motion of defendant the court struck out this testimony, and sealed a bill for the plaintiff. [1]

When Mary Gumaer was on the stand, plaintiff offered to prove by her that she is a sister of Pardon T. Barber, and that she was aware that the property was advertised at sheriff's sale at Wilkes-Barre; that she was the owner or assignee of one of the purchase money judgments; that she never had any conversation with Pardon T. Barber in which she authorized him to appear for her or in anywise to protect her interests, or to purchase the property for her as trustee; that she has never received any interest from the property since the purchase by Pardon T. Barber, and that he has claimed to her that he owns

it in his own right. This for the purpose of contradicting Pardon T. Barber in his testimony wherein he says he appeared for his sisters and acted for them in furnishing the purchase money to Coleman Wells for the purpose of buying the estate for the heirs.

The offer was objected to as irrelevant and immaterial; the objections sustained, and exception noted for plaintiff, at whose request a bill is sealed. [2]

Plaintiff offered to prove by this witness that she is one of the heirs of Williams Barber, and never did agree or elect to take the property purchased by Coleman Wells, as executor, at Wilkes-Barre, for the estate as real estate, but, as one of the heirs, desired it should be sold and the proceeds divided among the heirs and the debts of the estate paid.

Objected to as immaterial and irrelevant; objection sustained, and exception noted for plaintiff, at whose request a bill is sealed. [3]

Plaintiff offered to prove by this witness that she is an heir of Williams Barber, and that at the time of the sheriff's sale in Wilkes-Barre there were many debts against the estate, a considerable amount owing to her and to other persons; this for the purpose of showing that Coleman Wells, as executor, was bound to bid upon the property and buy it for the purpose of protecting the creditors of the estate, and that he could not, as executor, enter into any secret trust that would defeat the honest creditors of the estate.

Objected to as immaterial and irrelevant; objections sustained and exception noted for plaintiff, at whose request a bill is sealed. [4]

Plaintiff offered to prove by Levi Gumaer that he is a son-in-law of Williams Barber, and that at the time of the sheriff's sale of this property the estate was indebted to him in a large amount of money advanced to the decedent during his lifetime, and for the payment of debts subsequent to his death; that Coleman Wells knew of the existence of these debts at the time of the sale, and, therefore, was bound to protect the estate so that it might be sufficient to discharge all liabilities against it; that the estate at the time of the sheriff's sale was worth about $1,500, and would have been sufficient to have paid all the debts of the estate.

Objected to as immaterial and irrelevant; objections sustained, and exception noted for plaintiff, at whose request a bill is sealed. [5]

Defendant's point was as follows :

1. That the payment of the purchase money, by Pardon T. Barber, the defendant, at the sheriff's sale of the land in dispute, in 1877, by operation of law raised a resulting trust in favor of Pardon T. Barber individually, or in favor of the persons in whose interest and for whose benefit he paid the money; and, though the title was taken in the name of Coleman Wells, executor, the land so purchased became the property of Pardon Barber, and the persons for whose benefit he paid the purchase money; and the verdict of the jury must be for the defendant. *Answer :* I affirm that proposition. That is, substantially, as I have already told you; because Pardon Barber paid this purchase money, the property belonged to him and those whom he acted for, and not to Coleman Wells, as executor of the estate of Williams Barber.

Plaintiff's points were as follows :

4. That, as a matter of law, Coleman Wells, as ·executor of Williams Barber, bought the property, the piece of land in dispute, together with another piece, at the sheriff's sale in Wilkes-Barre in 1877, in order to protect the estate for which he held judgments against said real estate, and as· such took the title as trustee for the estate of Williams Barber, and had the right to sell the same, at public or private sale, pay the indebtedness of the estate and distribute the balance according to the terms of the will, and that the purchaser at said sale would take a good title to said land. *Answer :* I decline to affirm that proposition, gentlemen of the jury. I do not believe it is the law. [7]

5. That Coleman Wells, as executor of Williams Barber, could not enter into any trust agreement with any person, either an heir or beneficiary in the will, or stranger, by which said estate would pass to the said cestui que trust to the prejudice of a beneficiary under the will, or to the creditors of the estate of the decedent. *Answer :* I decline to affirm that proposition. If Mr. Coleman Wells could protect the interests of the parties interested in any other way, that was simply a matter of judgment. It was not absolutely necessary for him to protect the interests of the estate just in one way, by attending the sheriff's

sale. If he could protect the interests of these parties in the way he did, he, no doubt, had the right to do so. But he was obliged, under his duty as executor of the estate, to use due diligence in protecting the interests of the parties; and, as I have already said to you before, if he failed to do that, then they had the right to surcharge him to the extent of the law, by reason of his negligence. [8]

6. That, as a matter of law, the money which Pardon Barber furnished to Coleman Wells, executor of Williams Barber, at the time of the sheriff's sale at Wilkes-Barre, was a loan to him, to enable him, the said Coleman Wells, as executor, to purchase the real estate which was being sold, and against which he held judgments belonging to his testator's estate, in order to protect the estate, and was not furnished as purchase money, and hence Coleman Wells took the property as trustee for the estate, and did not take the property as trustee by virtue of Pardon Barber furnishing the purchase money, either for himself or anybody else. *Answer:* I decline to affirm that proposition, gentlemen of the jury, because the certificate, or receipt, which Mr. Wells himself signed, states expressly, upon its face, that this money was furnished to him by Pardon Barber solely, and it was not his property, that is, it was not Mr. Wells's property, or the property of the estate of Williams Barber. We must give these papers a fair and reasonable construction. [9]

8. That, as a matter of law, the purchase money of the property at the sheriff's sale, sold under the Finn judgment, was not only the $200 paid to the sheriff, but the judgments held by the executor for the estate, and which were discharged by said sale and rendered valueless. *Answer:* I decline to affirm that proposition. [10]

The court charged in part as follows:

[As I understand the evidence, it has been admitted, and, as counsel freely admit, the evidence leaves no questions of fact in dispute for the jury to pass upon. There is no conflict in the evidence, that has been admitted, as to what the facts in the case are.] [11] . . .

[It appearing, therefore, from the undisputed evidence in the case, gentlemen of the jury, that by virtue of the payment of this purchase money by Mr. Barber, at the time of the sheriffs'

sale, a trust resulted in his favor and those whom he repre-
sented, the executor had no title in himself; he simply repre-
sented Pardon T. Barber, and those whom Barber represented,
and he had no right to sell against their will;] [12] and parties
who had notice of what the Barber claim was, or reasonable
cause of notice, took no title under that sale, whatever. [And,
for that reason, gentlemen of the jury, the facts not being in
dispute, the question in the case being simply one of law, the
law casts upon me the burden of deciding that question. It is,
no doubt, an important question, but I am satisfied, in my own
mind, I can reach no further conclusion. Counsel have failed
to show me any law to the contrary; and, under the evidence,
therefore, it is my duty to say to you that your verdict must
be in favor of the defendant.] [13]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–5) rulings on evidence, quoting the
bill of exceptions; (6–13) above instructions, quoting them.

*G. M. Watson*, for appellant.—The mere payment of money
will not raise a resulting trust if it was not the intention of
either party that the beneficial interest should be in the parties
so paying: 10 Am. & Eng. Ency. of Law, 13; Nichols v. Nich-
ols, 133 Pa. 438; Dryden v. Hanway, 100 Am. Dec. 61; Sul-
livan v. McLenans, 65 Am. Dec. 781; Hamilton v. McGuire, 3
S. & R. 355; Weigley v. Weir, 7 S. & R. 309; Moyer v. Moyer,
12 Cent. 519.

If, by operation of law, Wells took such an estate, as he was
not obliged to invoke the assistance of the orphans' court, he
took it as a trustee for himself and extra his office as executor,
and had a right to sell it in the manner he did and divide the
proceeds: Hunt v. Townsend, 100 Am. Dec. 63; Oeslager v.
Fisher, 2 Pa. 467; Johnson v. Bliss, 11 W. N. C. 293; Fell's
Est., 9 W. N. C. 382.

*S. B. Price*, *H. M. Hannah* and *C. H. Soper* with him, for
appellee.—Where the defendant in an action of ejectment sets
up title in himself under a resulting trust, against a legal title
in the plaintiff, the action is turned into a proceeding in equity,
in which the trial judge becomes a chancellor and the jury are

simply his advisers : Wylie v. Mansley, 132 Pa. 65; Gilchrist v. Brown, 165 Pa. 275.

Where land is paid for by one person but the title is taken by another, there is a resulting trust by operation of law in favor of the person by whom the money is paid : 4 Kent's Commentaries, 300; Perry on Trusts, sec. 126 ; German v. Gabbald, 3 Binn. 304; Kisler v. Kisler, 2 Watts, 323 ; Jackman v. Ringland, 4 W. & S. 149; Lynch v. Cox, 23 Pa. 265 ; Beck's Exr. v. Graybill, 28 Pa. 66; Nixon's App., 63 Pa. 279; 10 Am. & Eng. Ency. of Law, 5.

Such a trust cannot be defeated by parol declarations made afterwards, so that they are not part of the res gestæ : Edwards v. Edwards, 39 Pa. 377 ; Warren v. Steer, 112 Pa. 642.

Where there is no immediate necessity for a sale it will be a breach of trust in the trustee to bring on a sale under manifestly disadvantageous circumstances : Hill on Trustees, 712; Perry on Trusts, sec. 770 ; 1 Lewin on Trusts, 423.

If the trust property be sold at a grossly inadequate price, it is a breach of the trust which affects the title in the hands of the purchaser and the court will not enforce such sale : 1 Lewin on Trusts, 423.

Wherever the purchaser is affected by what in law constitutes a breach of trust, the sale is void as to him : Wormley v. Wormley, 8 Wheat. 445.

It is a universal rule that one to whom any business has been confided cannot create other relations which will put him in an attitude of hostility to his principal or cestui que trust : Hill v. Frazier, 22 Pa. 324.

The doctrine that a trustee may not acquire an interest prejudicial to or in conflict with the interests of his cestui que trust, is a rule of public policy necessary to preserve honesty and fidelity in the administration of trusts, and is too well settled to be departed from : Fisher's App., 34 Pa. 31; Chorpenning's App., 32 Pa. 316.

The operation of the prohibition is not confined to those who are personally active in effecting a sale : Beeson v. Beeson, 9 Pa. 284.

OPINION BY MR. JUSTICE McCOLLUM, May 28, 1896 :

The sheriff conveyed the land in dispute " to Coleman Wells,

executor of Williams Barber, deceased," and Wells acknowledged in writing that the purchase money was furnished to him by the defendant. It was contended by the plaintiff that Wells held the land in trust for the estate, and by the defendant that he held it in trust for the heirs. It was also contended by the plaintiff that if he held it for the estate it was to be regarded as personalty, and he could sell it as such without the aid of the orphans' court. The learned trial judge conceded that if he held the land for the estate his sale of it in 1885 to Strauss, who conveyed it to the plaintiff, entitled the latter to recover.

The conveyance of the land to Wells as executor was prima facie evidence that he held it for the estate, and his sale of it to Strauss was an indication that he supposed he so held it. It was conceded that the money paid for the land was furnished to Wells as stated in his written acknowledgment or receipt to which we have already referred. The learned trial judge thought this fact, considered by itself, raised a resulting trust in favor of the defendant, and as the plaintiff admitted that he purchased with notice of the defendant's claim he was not entitled to recover. The jury were therefore instructed to find for the defendant. This instruction was obviously based on the familiar principle that, where in a purchase of land the consideration is paid by one and the conveyance is made to another, the presumption is that the latter holds the title in trust for the former. But this presumption is not conclusive. It may be rebutted by evidence which satisfactorily shows that it was not the intention of either party that the beneficial interest should be in the party paying: 10 Am. & Eng. Ency. of Law, p. 13, and cases cited; Lynch v. Cox, 23 Pa. 265, and Hays v. Quay, 68 Pa. 263. In other words the presumption may be overcome by proof that it is at variance with the mutual intention or understanding of the parties, and any circumstance which throws light on the transaction or explains its true character is admissible for the purpose of strengthening or rebutting it: Strimpfler v. Roberts, 18 Pa. 283.

In our case the money that was paid to the sheriff by the executor was furnished to him by a son of Wms. Barber, deceased, whose estate held three judgments against the land, amounting at the time of the sale to over $1,600. The judgments were first liens. The land once belonged to Williams Barber, who

sold it in April, 1868, to his son Ira T. Barber for $1,437. The judgments were entered on Ira T. Barber's notes and represented the unpaid purchase money. The land was worth at least a thousand dollars at the time of the sale, and it was the only property out of which the estate could realize anything on the judgments. Under these circumstances we would naturally expect an executor who was faithful to his trust to do what he reasonably could to prevent the loss to the estate which would result from the sale of the land to another for one fifth of its value, and that the parties interested in the estate would cooperate with him. Presumably with this object in view the executor and Pardon Barber attended the sale and agreed with the execution creditor that the land should be sold to the executor for a sum sufficient to pay the costs incurred in selling it. The executor had no money and Pardon Barber furnished him the amount necessary to carry out the agreement. The effect of this arrangement upon the interests of the estate was precisely the same as if the land had been sold to the executor for a thousand dollars and he had paid four fifths of this sum by a credit upon the judgments and the other fifth of it with the money furnished to him by Pardon Barber. Under such circumstances there could be no resulting trust in favor of the latter for more than a one fifth interest in the land, and whether he acquired any claim upon or interest in it except as heir or creditor depended upon the intention with which the money was furnished.

It seems to us that this is a case in which something more was required to sustain the defendant's contention than the furnishing of the money as stated in the receipt given by Wells. It is evident that he so regarded it because he supplemented the receipt with testimony tending to show that the money was furnished under an agreement that Wells was to hold the land in trust for the heirs. If anything was made clear by this testimony it was that Pardon Barber desired to have the deed of the land, that Coleman Wells as executor desired to have the deed of it, and that each distrusted the other. It also appeared from the testimony that while there was mutual distrust there was mutual profession of anxiety to protect the interests of the heirs. While Nicholson, who represented Wells and Barber in effecting the arrangement with the execution creditor

under which the land was sold, testified that he understood it was their intention that "Coleman Wells should hold the legal title for the heirs or family of Williams Barber," he also testified "that there was some talk as to what disposition Coleman Wells's executor should make of it in case we were successful at the sheriff's sale in his being the purchaser, and I told them that would be settled in the orphans' court. That was assented to." In his cross-examination he said, "When I told them it would probably go through the orphans' court, I meant it would have to be sold to pay debts. I don't remember whether anything was said about the debts of the estate at that time. It occurs to me there was."

We think that in view of the evidence in the case, oral and documentary, it was for the jury to find under proper instructions from the court with what intention the land was bought, and the money required in the purchase of it was furnished. We think too, that it was competent for either party to show the assets and liabilities of the estate of Williams Barber at the time of the sale, and subsequent conversations between Wells and Pardon Barber in reference to the transaction consummated by it. These were matters proper for the consideration of the jury in determining whether it was the intention of the parties that Wells should receive and hold the title to the land as trustee for the heirs, or for the benefit of the estate.

There is another matter to which attention should be directed in this case. Wells sold the land for $50.00 seven years after he received the deed for it, and ten years after the death of Williams Barber. It does not appear that any heir or creditor demanded that he should sell it. His delay in and manner of making the sale were not consistent with the existence of any valid claim against the estate. If he held the land for the estate there was apparently no one interested in it except the heirs, and they were not consulted. The undisputed evidence shows that the sale of the land was conducted by the attorney of the estate, who bid it off for Strauss on the latter's instruction to do so "as cheaply as possible." Under these and other circumstances surrounding and connected with the sale, it is for the court and jury to consider and determine on a retrial whether, in any aspect of the case, the sale made by Wells

to Strauss divested the interest of the heirs, or the estate, in the land in dispute.

To the extent that the rulings complained of are in conflict with this opinion the specifications of error are sustained.

Judgment reversed and venire facias de novo awarded.