72      221
33 SC ⁴226

# Rockland and Venango Coal and Oil Co. *versus* McCalmont *et al.*

# McCalmont *et al. versus* Rockland and Venango Coal and Oil Co.

1. P., on behalf of ten, purchased land, they took possession, made improvements, and were afterwards incorporated.   Afterwards M. purchased the land at treasurer's sale for taxes; the corporation brought ejectment against him; *Held,* that a deed to the corporation executed and delivered after the commencement of the suit was evidence for the plaintiffs.

2. The purchaser, unless his purchase at treasurer's sale be valid, was an intruder and could not contest the validity of the sale as between the holders of the legal title and the purchaser.

3. The entry and possession of the land by the corporation, with the

[Rockland & Venango Coal Co. *v.* McCalmont.]

consent of the holders of the legal title, was a title under which the corporation could recover in ejectment against a worthless title.

4. The Statute of Frauds or Act of 1856 against parol trusts is not applicable ; the title between the vendor and vendee not being in controversy.

5. The *possession* of the plaintiffs was a sufficient title on which to recover against an intruder.

6. The time for redemption of lands sold for taxes begins to run from the *sale*, not from the treasurer's deed.

7. The Act of May 1st 1868, repealed the provisos of 41st section of Act of 1844, as to sale of seated land for taxes in Venango county, and left the right of redemption to be regulated under the former acts.

8. Cromelien *v.* Brink, 5 Casey 522, adopted.

October 22d 1872.    Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Venango county :* Of October and November Term 1872, No. 102 and 103.

The action in which these writs of error were taken, was an ejectment commenced February 28th 1871, by the Rockland and Venango Oil Company, against S. P. McCalmont and another, for a "tract of land in Rockland township, containing 87 4-10 acres, being allotment 418 of Bingham lands, part of warrant 3508."

The cause was tried May 11th 1872, before Jenks, P. J., of the 18th district, when it was admitted that the title of both parties was derived from Elihu Chadwick.

The plaintiffs gave in evidence, deed for the land in question, E. Chadwick to A. Stranford and W. Smith, dated January 21st 1861 : deed Stranford and Smith to H. S. Withridge and N. G. Penniman, dated October 29th 1864 ; letters patent from the Commonwealth, dated February 17th 1865, incorporating the plaintiffs.

They then called N. G. Penniman, one of the grantees from Stranford and Smith, who testified that the land had been purchased on behalf of ten individuals who afterwards organized the Rockland and Venango Oil Company ; that in execution of the trust a deed had been made by Withridge and himself to the plaintiffs ; it was executed and delivered April 30th 1872 (after the issuing of the writ in this case).    The company took possession of the property in the fall of 1864, and adopted the title before they got the act of incorporation.    William Winner sold the property to them and acted for them for a short time.

The plaintiffs then offered in evidence a deed from Withridge & Penniman to them for the land in question, dated February 18th 1865.    The offer was objected to by the defendants on the ground that the deed was delivered after the issuing of the writ in this case.    The court admitted the offer and sealed a bill of exceptions for the defendants.

The defendants then gave in evidence, the assessment list of Rockland township, for 1865, "William Winner & Co., No. 418, 87 acres, seated list ;" and same for year 1866.    Treasurer's sale

of land as seated June 10th 1868 to S. P. McCalmont, for taxes of 1865 and 1866, and treasurer's deed to him for same, dated July 30th 1868.

The plaintiffs in rebuttal gave evidence by N. G. Penniman that in the latter part of 1864, they put a stationary engine on the ground and erected a dwelling-house near the line of McCalmont; they sank a well in 1865. In that year their superintendent lived in the house; got oil out of the well in June 1866, when there was $100 or $150 worth of oil in the tank; they leased in June 1866 to one Anderson, who agreed to continue pumping the well and to put another down; on going to the premises in the fall of that year, witness found that Anderson had gone; the engine, tank, derrick, &c., were worth $1100; oil was left in the tank in 1866 to pay the taxes.

There was evidence also that part of the machinery was on the premises in 1867, 1868 and 1869.

Hugh Craig testified, that under instructions from Penniman he went to the county treasurer and told him he wanted to get the amount of taxes against the Rockland and Venango Oil Company; the treasurer said there were no taxes against that company; witness described the property and gave him the names of Withridge, Penniman, Stranford, Smith and others; if he had got the amount he would have paid the taxes; he went again with R. S. Cochrane and examined the land book to see if the property had been sold; he examined the recorder's office for the names of owners in the line of plaintiff's title, and in the commissioners' office for assessments for a number of years; he described the property to the township assessor who told him it was not assessed; he saw a piece assessed in Winner's name, but it contained two acres less than this tract; he did not look for the number of the tract, nor examine assessments earlier than 1867.

Cochrane testified as Craig did with reference to their joint examination.

The plaintiffs offered to prove " that on the 24th day of June 1870, more than two years after the date on which the land had been struck down to defendant, but within two years after the execution, acknowledgment and delivery of the treasurer's deed, or either of them, and within two years after the payment of taxes and costs and execution and delivery of the surplus bond by defendant, or either of them, the agent of the plaintiff offered to pay the treasurer the money necessary to redeem the land, which said money was refused by said treasurer."

This was objected to by the defendant, for the reason that the offer is to prove a tender of the money after the expiration of two years from the date of sale.

The offer was rejected and a bill of exception was sealed for the plaintiffs.

[Rockland & Venango Coal Co. v. McCalmont.]

The defendants in answer gave evidence as to the abandonment of the land and that there was no property on it about September 1866 and after, except a derrick of much less value than the amount of taxes.

The Act of April 29th 1844, section 41, provides that where lands upon which personal property sufficient to pay taxes cannot be found, and the owners neglect to pay the taxes, the collectors of the proper townships shall return the lands to the commissioners, and they shall be sold as unseated lands, provided that no sale shall be made of such lands until the owner shall have neglected to pay for two years and that the owner may redeem at any time within one year after receiving actual notice from the county treasurer that the lands have been sold, by paying the amount of taxes and costs with interest from the time when the taxes became due.

The Act of May 1st 1868, Pamph. L. 1158, repealed the provisoes to the 41st section of the Act of 1844.

The Act of April 3d 1851, section 3, Pamph. L. 317, provides that if any taxes in Venango county shall remain unpaid for thirty days after the 1st of August in any year a warrant for their collection shall be issued by the treasurer and placed in the hands of the constable of the proper township; and if any persons owing taxes shall neglect to pay them in ten days after demand the constable shall distrain the goods of the delinquent and sell them. By the 6th section of the same act the constables are required to settle their accounts and pay the money collected by them under the warrants within four months after the delivery of the warrants to them.

The defendant's points were :—

1. The plaintiff not having shown either a legal or equitable title in itself, for the land described in the writ prior to the beginning of this suit, the verdict must be for the defendants.

This point was answered in the negative.

3. If the collector, at any reasonable time between the time the duplicate came into his hands and the time he was required by law to return the same, went to the land and found it vacant and no property there out of which the taxes might be made and had no reason to believe there would be property on the land in due time, out of which the taxes might be made, the sale of the land would not be void because there might have been property there at some time while the duplicate was in collector's hands.

The court answered the 3d point as follows :—

"We perhaps do not fully understand this point, but as it appears to us this qualification is necessary, that if there was not personal property on the land sufficient to pay the taxes after the time the constable, by reasonable diligence, could have levied upon the same, he had the right to return the land, and a regular sale upon

[Rockland & Venango Coal Co. v. McCalmont.]

such return would vest a good title in the defendants.  As thus explained we affirm this point."

The verdict was for the plaintiffs.

Each party took a writ of error:—

The plaintiffs assigned for error the rejection of their offer of evidence.

The defendants assigned for error:—

1. Admitting the deed from Withridge and Penniman to the plaintiffs.

2–3. The answers to the defendants' 1st and 3d points.

*J. D. Hancock*, for plaintiffs below, referred to Act of 1844 and 1868, *supra*.  Such acts should be construed liberally in favor of the owner of the land sold: Gault's Appeal, 9 Casey 97.  By Act of March 13th 1815, sect. 4, 6 Sm. L. 301, 2 Br. Purd. 1447, pl. 30, two years after sale are allowed to redeem.  A purchaser acquires no right until he receives his deed: Hoffman *v.* Bell, 11 P. F. Smith 444; Burd *v.* Patterson, 10 Harris 219; Sheik *v.* McElroy, 8 Id. 25.  The land having been purchased for the company and possession taken for them, they had an equitable title on which they could recover in ejectment: Willing *v.* Brown, 7 S. & R. 467; Schuylkill Navigation Company *v.* Farr, 4 W. & S. 62. A naked possession is sufficient to recover in ejectment against one who has put plaintiff out without title: Shumway *v.* Phillips, 10 Harris 11; Woods *v.* Lane, 2 S. & R. 56.  If the plaintiff have not a regular paper title, it is sufficient if he show a right of entry: Milligan *v.* Dickson, 1 P. C. C. R. 435, note; Hylton *v.* Brown, 1 W. C. C. R. 204; Allen *v.* Lyons, 2 Id. 475.  The trust resulted directly to the party for whom the purchase was made: Brightly's Eq. Jur. 338; 4 Kent's Com. 307.

*S. C. T. Dodd*, for defendant below.—To raise a resulting trust the purchase-money must be paid at the time of the purchase: Barnet *v.* Dougherty, 8 Casey 371.  He cited also the several Acts of Assembly as to tax sales, referred to *supra*.  When land is knocked down at the treasurer's sale is the time from which the period for redemption is to be computed: Cromelien *v.* Brink, 5 Casey 522.

The opinion of the court was delivered, November 4th 1872, by

AGNEW, J.—These writs of error were heard together, and will be disposed of in the order in which they are stated.  The first and second specifications of error in the first case may be considered together.  The evidence shows that the land was bought by the members of the Rockland and Venango Coal and Oil Company for the purpose of organizing the company, and using the land for the purposes of its intended corporation.  The company was duly organized and incorporated, the land taken into posses-

22 P. F. SMITH—15

sion and held by the company in its incorporated capacity; the members as individuals claiming no title in themselves, and valuable improvements made by the company, all which took place before the sale of the land for taxes to S. T. McCalmont, Esq. On the trial of the cause one or more of the original purchasers and corporations made proof of these facts. The contest here is not between the company and one claiming title under the purchasers of the land for the corporation or other claim out of an ownership before the treasurer's sale, but between the company and one who stands as an intruder upon the land, unless he can make good his treasurer's title. Those who might gainsay the trust for the company do not, but, on the contrary, admit it. Under these circumstances the entry and prior possession of the land by the corporation, with the consent of the holders of the legal title, constitutes a sufficient title to recover against the purchaser at the treasurer's sale, if his title be worthless: Shumway *v.* Phillips, 10 Harris 151, and cases there cited. The reasons for enforcing the Statute of Frauds and Perjuries, or the Act of 1856, against parol trusts do not exist, for that title is not the subject under controversy. In this case, it being an ejectment, the only principle to be enforced against the plaintiffs is that which requires them to show a sufficient title to recover; and this is found in their former possession which was intruded upon by the defendants. Christy *v.* Brien, 2 Harris 248, is an analogous case. There the claimants of a parol title without delivery of possession, which was supported by the testimony of the vendor at the trial, were allowed to recover against an intruder who held by less than twenty-one years' possession, on the ground that such a case did not fall within the Statute of Frauds. This principle was reiterated in the case of Houser *v.* Lamont, 5 P. F. Smith 311.

These reasons show that the admission of the deed to the corporation, though dated and delivered after the bringing of the suit, was no error. It was not received as the evidence of the plaintiff's title. Had that been the case, the title vesting after suit, it would have been an error to receive it. But it was properly received as another circumstance connected with the possession, improvements and testimony of the former owners of the legal title, to show a recognition of the rightful character of their possession, by the individual members who made the purchase. We discover no error in the answer of the court recited in the third specification. It needs no elaboration.

In the second writ of error brought by the defendants below the question for review is the period from which the right of redemption runs. It is also a question whether any right of redemption exists under the special law applicable to Venango county, passed on the 1st of May 1868, P. L. 1158. That law repeals the provisos to the 41st section of the Act of 29th April 1844, authorizing

the sale of seated lands for unpaid taxes. This repeal left seated lands to be "sold as unseated lands are now sold in satisfaction of the taxes due by the said owner or owners." Had the 41st section of the Act of 1844 ended with these words, it is evident the sale of seated lands would have been regulated throughout by the laws then existing for the sale of unseated lands, which would have included the right of redemption. The legislature saw this, and therefore added the two provisos to carry out an intended change of the features in the former laws. The first was to sell seated land after a neglect to pay taxes of *two* years instead of *one* in the case of unseated lands. The second was to authorize the redemption within one year after *actual* notice of the sale by the treasurer, instead of an absolute requirement to redeem within two years after the sale without notice, as in the case of unseated lands. The purpose and arrangement of the provisos show clearly the intent to *regulate* the redemption, not to *give* it. Existing under the former laws, therefore, the repeal of the provisos left the right of redemption as regulated under the former acts.

In regard to the time of redemption we think the court below was right in holding that it begins to run from and after the day of sale. This was the decision in Cromelien *v.* Brink, 5 Casey 522. It is said the precise point in this case was not made in that. But it is not supposed that the question whether the day of sale should be included or excluded in the computation of the two years, and an elaborate opinion on that point be given by this court, if the time ran from the making of the deed instead of the day of sale. The sale there was on the 10th of June, and the redemption on the 10th of June, two years afterwards. The court adopted the plain language of the 4th section of the Act of 13th of March 1815, which is "two years after *such sale*." What sale? Undoubtedly the sale stated in the 1st section, which requires the treasurers of the several counties "to commence on the second Monday of June in the year 1816, and at the expiration of every two years thereafter, and adjourn from day to day, if it shall be found necessary so to do, and make public sale," &c. This section does not stand alone in the interpretation, the sale being an act referred to in various parts of this act, and previous laws to regulate the system. This long publication of the day of sale is required in various places to inform owners as well as bidders, the time when taxes have been unpaid, to wit, one year before the sale, the time when the purchaser must pay the taxes and costs, to wit, as soon as the property is struck down: Act 1817, § 1. There are very strong reasons also for the day of sale being so fixed. Of that day every one has notice; the owner as well as the purchaser. It is a day known to the treasurer and to be found in his books, and can always be ascertained. But if the deed be the index of

[Rockland & Venango Coal Co. *v.* McCalmont.]

time the case is different. Shall the date, the acknowledgment in court, or the delivery, begin the computation? If so, it is evident the owner has no certain guide to regulate his action. If it be the date, that is not always to be found in the treasurer's books; if the acknowledgment, he must go into the Court of Common Pleas, and if the delivery, he is wholly at a loss to know his rights. The right of redemption is too important to be thus uncertain. The legislature required the redemption to be made at the treasurer's office, and through that officer. His book of sales was intended to guide both the owner and the officer, and not evidence to be sought *aliunde*. Besides, universal practice has been to regard the day of sale, the time when the property was knocked down, and the taxes and costs required to be paid by the purchaser, as the time from which the computation is to be made. Any other time now adopted, would endanger many titles. The judgment is affirmed in both cases.