## Stroud et al. v. Kramer.

*Bernard J. O'Connell* (with him *W. Nelson L. West* and *C. Raymond Ireland*), for complainants.

*Robert T. McCracken* (with him *Theodore E. Nichterlein*), for defendants.

SMITH, J., Dec. 24, 1929.—A bill of complaint on the part of William F. Stroud and Horace B. Wilgus was filed against Edwin A. Kramer and Adelaide R. Kramer, praying that an injunction issue enjoining and restraining Adelaide R. Kramer from transferring or otherwise encumbering the title to certain real estate which the complainants averred she held in trust for the complainants; and further praying that a decree and order be entered requiring the said Adelaide R. Kramer to convey the said premises to the complainants by a proper deed on the payment to Edwin A. Kramer or to Adelaide R. Kramer of the sums advanced by the said Edwin A. Kramer for the purchase of the property, with interest on said sums, etc.

The answer to said bill was filed by the defendants, and the case came on for hearing on Wednesday, June 19, 1929, at which time such evidence as the parties chose to introduce was taken before the Chancellor. After reviewing the testimony submitted in the case, we find the following facts:

### Findings of fact.

1. In 1913 Stroud and Wilgus purchased a tract of ground for a lumber yard, at Beach Street and Montgomery Avenue, in the City of Philadelphia, and being desirous of enlarging their plant, they came in touch with Edwin A. Kramer, a real estate agent, who as such agent sold them premises No. 522 Richmond Street, which was contiguous to their property and gave them an entrance on Richmond Street.

2. Sometime after the purchase by the plaintiffs of premises No. 522 Richmond Street, they had interviews with Edwin A. Kramer, in which they outlined to him a plan by which they wished to acquire all the properties on both sides of Montgomery Avenue between Richmond Street and Beach Street, and arranged with him to act as their agent in buying, for their firm, from time to time, these properties, with the view of inducing the city authorities to close Montgomery Avenue and consolidate their holdings in one contiguous tract.

3. Plaintiffs also consulted with Edwin A. Kramer in regard to acquiring other properties on the northerly side of Richmond Street for lumber storage purposes.

4. In pursuance of these arrangements, Edwin A. Kramer purchased the property of No. 911 East Montgomery Avenue, property of Nos. 913 and 917 East Montgomery Avenue, property of Nos. 919 and 921 East Montgomery Avenue and the property of No. 608 Richmond Street, which adjoined them on the rear, and settlement was made by the said Kramer in 1917, but no bill was rendered by him to plaintiffs for advances made by him for expenses incurred until July 24, 1919, when his bill, amounting to $225, was presented and paid.

5. In 1918 Edwin A. Kramer purchased the property of No. 530 Richmond Street and the property at Nos. 524-26-28 Richmond Street; in 1920 he purchased the property No. 525 Richmond Street, property No. 527 Richmond Street and property No. 523 Richmond Street, and for his services and the advancements made by him in the purchasing of these properties he rendered a bill for his 1918 and 1920 purchases on April 11, 1922, in the sum of $658.58, this representing advancements made by him, commissions and compound interest, and said bill was paid by the plaintiffs. It further appeared that the city opened Delaware Avenue and took the bed of Richmond Street at Montgomery Avenue, so that the Richmond Street properties became known as Delaware Avenue properties.

6. Edwin A. Kramer, as agent for the plaintiffs, attempted to purchase the properties Nos. 1901, 1903, 1905 and 1909 East Montgomery Avenue from one Donnelly, but failed to consummate the deal, after which the plaintiffs purchased these properties in 1925 direct from the owners. In his answer Kramer claimed commission for the purchase of these properties, but there is nothing in the evidence submitted by him that would show that he was entitled to any commission for negotiating the purchase of any of said properties.

7. In 1921 Joseph F. Slocum, who was the tenant of "A" and "B," from the Casey Estate, owning property at the northeasterly corner of Delaware and Montgomery Avenues, which is the subject-matter of the bill of complaint, attempted to purchase the properties in question from the Casey heirs and spoke to Wilgus about the same, and told him that he would not stand in the way of Stroud and Wilgus if they were interested in the property; whereupon Wilgus, one of the plaintiffs, told Stroud, the other plaintiff, and in turn Stroud saw Edwin A. Kramer and asked him to buy the property for Stroud and Wilgus; whereupon Edwin A. Kramer entered into negotiation with the Casey heirs and purchased the said property, subject to a ground rent, for the sum of $1200.

8. The Casey heirs were able to give a clear title to that portion of the lot fronting on Montgomery Avenue (tract "B"), but could only give a squatter's title to the small corner (tract "A"). Then Kramer was asked to take title in a "straw" name; whereupon he suggested his sister's name for the purpose, and title was taken in her accordingly, Edwin A. Kramer advancing the whole of the purchase money.

9. Stroud and Wilgus promptly, upon the settlement with the Casey heirs, entered into the possession of all the property except that portion that was occupied by Slocum, tore down the other buildings and fences on it and took possession of it at once for the purposes of their business. Edwin A. Kramer, as agent for Stroud and Wilkus, gave Slocum three months' notice to quit and collected the rent from him for the three months' period as agent for Stroud and Wilgus and paid the rent over to them. When the three months expired,

242

Slocum moved and Stroud and Wilgus took possession of that portion which Slocum occupied and incorporated it into their other holdings, placing a high board fence around the same, and from Dec. 15, 1921, up to the present time have continued in the exclusive possession and use of the property as part of their lumber yard.

10. In the negotiations for the purchase of the property in question and the preparing of the agreement and the deeds of conveyance for it from the Casey heirs, prior to and at the time of the settlement of the property in question, Edwin A. Kramer was constantly in touch with W. N. L. West, attorney for Stroud and Wilgus, and followed his instructions and advice. It was deemed wise by the parties in interest that the title should be taken in the name of a "straw" person in order that a tax sale might be arranged for on the piece as to which the Casey heirs could only convey a squatter's title. The taxes for 1921 having been paid, it was arranged that the 1922 and 1923 taxes were to remain unpaid and a tax sale held in 1924. However, Edwin A. Kramer paid the taxes in 1922 by mistake and thus postponed the possibility of a tax sale until 1925. Stroud and Wilgus, on account of their business, did not care to have a sheriff's sale in their name, and for that reason the title was taken in the name of a "straw" man.

11. Stroud and Wilgus dissolved partnership in 1923, and as a result of this dissolution, numerous questions were left open between the members of the firm. Wilgus was to buy Stroud out, and some question arose as to the division of the real estate or as to the expenditures in connection therewith. A deed was made, delivered and recorded for Stroud and Wilgus, copartners, to Stroud and Wilgus as tenants in common, which included their right, title and interest in tracts "A" and "B," and thus placed their name on the assessor's book as owners, and taxes were then assessed against them. This complicated the situation as to making title by a tax sale without getting their names on the sheriff's sale list, so that no active arrangements were made with Kramer to take over the title until the end of 1926 or the beginning of 1927.

12. Both Wilgus and Stroud, on several occasions, requested the defendant, Edwin A. Kramer, to give them a statement of the amount that was due, so that they could pay him off. Edwin A. Kramer put them off until, finally, Stroud saw Kramer in January of 1927 and insisted that he see West, the attorney, and give the latter the necessary information to clear the title up and get the title in some one else for the purpose of a tax sale in a new name. Accordingly, Kramer saw West and gave him a statement of the amount he had paid out, but it was not complete. However, in February of 1927, Kramer presented his full account. However, at that time arrangements between Stroud and Wilgus were not completed for the selection of a new "straw" name until June of 1927, when West, having been notified by Wilgus that his check was ready at any time, wrote to Stroud for his one-half of the amount, but, owing to a misdirection of the letter, the check was not received, and in the meantime Kramer called West on the telephone and told him that if he did not get the check by July 1, 1927, then "the whole matter was off;" whereupon he was informed that he could not do that, as he was a trustee and merely holding the title for Stroud and Wilgus as their agent.

13. Kramer knew that the plaintiffs took possession of the property, tore down the buildings and erected fences, and knew that they were in complete possession thereof. He never demanded rent from them, never ordered them from the premises and he never at any time prior to his communication with West in June of 1927 claimed that the property belonged to him.

14. Kramer sent a written three months' notice on behalf of Stroud and Wilgus to Slocum, the tenant, notifying him to vacate the property for Stroud and Wilgus, collected the rent for three months at $7 per month, and turned the rentals thus collected over to Stroud and Wilgus.

15. Wilgus, in a letter dated May 5, 1924, to Kramer, impliedly asserted his title to the property, and Kramer admits the receipt of a letter dated May 21, 1925, in which West, as counsel for Stroud and Wilgus, asserted the title in Stroud and Wilgus, and Kramer made no reply to either letter.

16. At no time did Kramer, either orally or in writing, assert any title to the property until, having ascertained that Wilgus, in December of 1926, had purchased two properties without consulting him, he, in June of 1927, apprised West, the attorney, that unless settlement was made by July 1, 1927, the matter was off.

17. In the purchase of the particular properties in question, Slocum, the tenant, called the attention of Wilgus to it, Wilgus called Stroud's attention to it, and Stroud arranged with Kramer to purchase it for Stroud and Wilgus.

18. The case was adjourned from June 6th, the original date fixed for trial, to June 18th, in order to give the defendant an opportunity to produce his books. At the trial he admitted this fact, but failed to produce the books, yet, under cross-examination, he said that they would have shown the accounts between himself and Stroud and Wilgus covering this particular property, but later he said that they would not.

19. Wilgus, relying on the ownership of Stroud and Wilgus of the corner tract "A" in the plan attached to the bill, and tract "B," which runs across the entire rear lots of Nos. 604 and 606 Richmond Street, purchased these for himself in 1925 and 1926 with the idea of thus completing the entire consolidation so long under way. He was thus led to spend this money by reason of his belief in the fact that he and Mr. Stroud owned the tracts "A" and "B," and paid a much higher price for these properties for that reason.

## Conclusions of law.

1. The defendant, Adelaide R. Kramer, is the sister of Edwin A. Kramer and holds the "straw" title to the properties, which are the subject of this suit, for him.

2. The said Edwin A. Kramer was the trusted and confidential agent of the plaintiffs in the purchase of the properties in question, and by reason of the trust reposed in him and the circumstances surrounding the purchase of said property, he is a trustee ex maleficio for the plaintiffs and their assigns.

3. That the defendant, Edwin A. Kramer, as trustee ex maleficio, and his sister, Adelaide R. Kramer, who holds the straw title to said real estate, are, therefore, bound to reconvey the title to the premises in question to the plaintiffs or their assigns upon the repayment to them of all the sums of money advanced to date, together with interest upon such sums.

4. That the defendant, Edwin A. Kramer, should pay the costs incident to these proceedings.

## Discussion.

It appears from the facts in this case that William F. Stroud and Horace B. Wilgus were partners and conducted a lumber business at Richmond Street and Montgomery Avenue, in the City of Philadelphia, and for the purposes of the business in which they were engaged, they acquired from various individuals certain pieces of ground on both sides of Montgomery Avenue with a frontage on Delaware Avenue.

That Edwin A. Kramer, a real estate dealer, was employed by them for the purpose of negotiating the purchase of certain properties for them from time to time with the view of enlarging their lumber yard. Among a number of other properties which the said Edwin A. Kramer purchased for the account of the plaintiffs, there were two properties at the corner of Delaware Avenue, formerly Richmond Street, and Montgomery Avenue, marked on the plan as plots "A" and "B," which formed a part of the said tract of ground and lumber yard which plaintiffs have consolidated. Plot "A" was conveyed to Adelaide R. Kramer, the sister of Edwin A. Kramer, she being selected by him for the purpose of holding the title in trust, either for the plaintiffs or for her brother, and plot "B" was similarly conveyed to her for the same reason. The said Adelaide R. Kramer does not contend that she is the real owner of said lots. Both of these deeds were delivered on Dec. 15, 1921, and recorded on Dec. 29, 1921. The plaintiffs in their bill aver that these two pieces of property were acquired for the plaintiffs by and through their duly accredited agent, Edwin A. Kramer.

It was further alleged, and not denied, that, after the properties were purchased, the plaintiffs took possession of the same, excepting that part of said premises which was occupied by a tenant by the name of Slocum, who retained possession for three months after the properties were purchased, and then removed from said premises in pursuance of a notice that had been given him to deliver up possession, after which the plaintiffs also took possession of that portion of the property and fenced it in. Certain old buildings that were on the premises as purchased were torn down by the plaintiffs, and they have used and exercised absolute control and possession of said premises from that time up until the filing of the bill.

The defendant, Edwin A. Kramer, paid the purchase money, $1200, and also paid some taxes on the property, and it would appear from the evidence in the case was at all times ready and willing to have the properties deeded over to the plaintiffs up until July 1, 1927.

The evidence also shows that after these properties had been purchased, Edwin A. Kramer gave notice on behalf of the plaintiffs to the tenant Slocum to remove within three months' time; that during that three months' period Kramer collected the rent at the rate of $7 a month from this tenant and turned it over to the plaintiffs; that on more than one occasion he admitted that the property had been purchased for the plaintiffs, and went so far as to submit an itemized bill for the amount of the purchase money, taxes and interest compounded on the moneys advanced, demanding payment of the same, and it was not until after Wilgus in December of 1926 had purchased two other properties without consulting Kramer that Kramer, in the month of June, 1927, told West, the attorney for the plaintiffs, that unless settlement was made by July 1, 1927, the matter was off.

It would appear that during the time that Kramer acted as the confidential agent for the plaintiffs, he would purchase properties, advance some of the purchase money and subsequently, at convenient times, render bills to the plaintiffs for the moneys advanced, together with the interest thereon, and his earned commissions, these bills being honored when presented. Thereby a course of dealing, duly recognized by the plaintiffs and Edwin A. Kramer, had been pursued between them; such a course as would justify either of the plaintiffs or the defendant to rely on any transaction such as was had in this case.

There is no doubt in the mind of the Chancellor that at the time Kramer purchased these properties he was a duly authorized and accredited agent for

the plaintiffs, and while acting in that capacity any properties purchased by him would be for and on behalf of his employers, and, unless section 4 of the Act of April 22, 1856, P. L. 533, known as the Statute against Frauds, precludes the plaintiffs from recovering in this case, the defendants must be held to have taken the properties in question as trustees for the plaintiffs.

There is a provision in the Act of 1856 as follows: "Provided that where any conveyance shall be made of any lands or tenements by which a trust or confidence shall or may arise or result by implication or construction of law, or be transferred or extinguished by act or operation of law, then and in every such case such trust or confidence shall be of like force and effect as if this Act had not been passed."

We think that the instant case comes clearly within the exception embodied in the proviso to the Statute of Frauds. The evidence adduced in this case clearly shows that there was a conveyance "by which a trust or confidence" arose "by implication or construction of law" and that the defendants must be held to be trustees *ex maleficio*.

In the case of Seichrist's Appeal, 66 Pa. 237, in which there was a bill to compel conveyance, it appeared that Zirkenbach agreed to buy a tract of ground from one Marvin. Unable to complete his payments, he arranged with Seichrist to take over the title to the entire tract from Marvin, with an oral agreement with Seichrist that the latter would convey to him a certain portion of the land upon payment of a sum stipulated. The appellate court said: "If nothing more existed in the case than a mere bargain between the parties that Seichrist should take a title for the land from Marvin and afterwards convey to Zirkenbach on payment of the proportionate share of the purchase money, the arguments would be irresistible. Undoubtedly the Act of 1856 cuts up by the root all parol trusts by bargain or contract. It is intended to prevent frauds in relation to the title of real estate by requiring the evidence of it to be witnessed by a writing. But we are of opinion this case falls within the proviso to the 4th section of the Act of 1856, that where any conveyance shall be made of any lands or tenements by which a trust or confidence shall arise by implication or construction of law, such trust or confidence shall be of like force and effect as if the act had not been passed. Among the trusts thus resulting from the operation of law are those arising from the fraud of the party who has the title. Although no one can be compelled to part with his own title by force of a mere verbal bargain, yet when he procures a title from another which he could not have obtained except by a confidence reposed in him, the case is different. There, if he abuse the confidence so reposed, he is converted into a trustee *ex maleficio*. The statute which was intended to prevent frauds turns against him as the perpetrator of a fraud. It is not, therefore, the fact that the bargain by which he was enabled to obtain the title is verbal which governs the case, but the fact that he procured the title to be made to him in confidence, the breach of which is fraudulent and in bad faith. Clearly, such is the case before us."

In the case at bar, the defendant, Erwin A. Kramer, although called as a witness, did not deny any of the facts relied upon by the plaintiffs. In other words, all of the facts and circumstances testified to by the plaintiffs in the case were practically admitted, and this silence upon his part is a practical admission that he was a trustee of the plaintiffs; and the further fact that he rendered an account demanding settlement confirms the contention of the plaintiffs that the defendant was acting for and on behalf of the plaintiffs in the purchase of this property: Williard *v.* Williard, 56 Pa. 119; Hatcher *v.* Hatcher, 264 Pa. 105; Kauffman *v.* Kauffman, 266 Pa. 270.

In the latter case, Mr. Justice Walling said: "We find nothing to justify disturbing the decree. The facts found are fully warranted by the evidence and the question of equity jurisdiction is not raised. Merely as an express trust of land resting in parol, it could not be enforced against the trustees (section 4 of Act of April 22, 1856, P. L. 533; Purdon's Digest, 13th ed., vol. 4, p. 4838), except that they confess it in open court. A parol trust becomes valid when in the course of litigation it is confessed by the trustee: Hatcher v. Hatcher, 264 Pa. 105, 110; Christy v. Brien, 14 Pa. 248; Houser v. Lamont, 55 Pa. 311, 317; Rockland & Venango Coal, etc., Co. v. McCalmont, 72 Pa. 221, 226."

Neither does the fact that the defendant advanced any purchase money matter. The fact that an agent advances money for his principal does not preclude the principal from securing the benefit of a consummated deal.

"Where an agent to buy land uses his own money to complete the purchase, the transaction will be regarded as a loan to the principal. Nor does the fact that he pays in full out of his own funds necessarily exclude the operation of the principle:" Schrager v. Cool, 221 Pa. 622.

In the case of Gates v. Keichline, 282 Pa. 584, Mr. Chief Justice Moschzisker (page 592) said: "While the law contemplates payment of the purchase money by the beneficiary at the time of the creation of the trust, yet the funds may be advanced by another on his account (Kauffman v. Kauffman, 266 Pa. 270, 276), and this other may be the trustee himself where, as in the present case, the payment is made under an arrangement which contemplates the refunding of the amount advanced in a subsequent accounting between the trustee and his *cestui que trust;* particularly is this true if, as here, the person in whose name title is taken acts at the time as agent for the claimant: Cook v. Cook, 69 Pa. 443, 447, 448; Schrager v. Cool, 221 Pa. 622, 625. There are cases in which the trustee agreed at the time of acquiring title that the one for whom he was to hold should refund the purchase money to him in instalments, and the trust was sustained: Gilchrist v. Brown, 165 Pa. 275, 283; Kauffman v. Kauffman, 266 Pa. 274, 275, 276."

In the above case it was also held (quoting from the syllabus):

"A parol trust will be established where the evidence to support it is so clear, precise, convincing and satisfactory that it will satisfy the mind and conscience of a court sitting as a chancellor reviewing the testimony.

"In a proceeding to establish a parol trust in land, the trust will be established against defendant where the evidence shows that the property was purchased at sheriff's sale by defendant for his sister with money advanced to her from him, but which was subsequently repaid; that there was an agreement between them at the time of the sale that he would in this manner purchase the property on her account, and that at this period he was acting generally as agent for her affairs.

"In such case, the fact that the proofs relied on by plaintiff consisted largely of declarations made by defendant after he acquired title is a circumstance to be considered by the jury, but it neither rendered such proofs incompetent nor the body of the evidence legally insufficient to sustain the findings in plaintiff's favor."

In the case of Kern et al. v. Smith et ux., 290 Pa. 566, Mr. Justice Kephart, in affirming the decree of the lower court, said (page 570): "As agent of the fraternity, he could not obtain title for himself against their interest. This would have been a fraud, and where one employed to buy land for another uses the opportunity to his own advantage, a trust relation will spring from

such fraud: Schrager *v.* Cool, 221 Pa. 622. Even if the arrangements were altogether oral, Smith could not have held title as against his principals as the purchase money was paid by the fraternity. A resulting trust arises from such payment when it is proved by competent evidence, as it was in this case: Lloyd *v.* Woods, 176 Pa. 63; Gates *v.* Keichline, 282 Pa. 584; Hoover *v.* Strohm, 44 Pa. Superior Ct. 177. The fact that the agent was to, and did, advance additional money to enable title to pass will not change the result so far as the enforcement of the trust is concerned: Schrager *v.* Cool, *supra*."

From the evidence adduced at the time of the hearing, it appeared beyond question that the defendants have title to the properties in suit only by reason of the trust and confidence reposed in them by the plaintiffs, and that at the time the property was transferred to Adelaide R. Kramer, her brother, Edwin A. Kramer, who now claims the real title, was the duly accredited confidential agent of the plaintiffs, and in consummation of the deal was acting for and in their behalf, and in pursuance of the arrangements made at that time, the plaintiffs took the physical possession of this property and have been and remained in the absolute continuous possession, using the same in their business for a period of eight years and 'upwards, and the money that was paid for the property, together with the taxes thereon, was made and considered as made by the defendant, Edwin A. Kramer, as a loan; and these facts, in addition to the failure of the defendant to deny the allegations of the plaintiffs with respect to the acquisition of this property and the relation existing between him and the plaintiffs, amounts to a confession upon his part that he was and is a trustee *ex maleficio* of the property for the plaintiffs in the bill. Therefore, for the reasons above stated, the prayer of the petitioner, asking that the said Adelaide R. Kramer be enjoined and restrained from transferring or otherwise encumbering or invalidating the title which she holds in trust for the plaintiffs, should be granted; also, that the said Adelaide R. Kramer should be ordered and decreed to convey the said premises to the plaintiffs by a good and sufficient deed, upon the payment to Edwin A. Kramer or to Adelaide R. Kramer, for the account of the said Edwin A. Kramer, of the sums advanced by the said Edwin A. Kramer for the purchase of the property for the account of the plaintiffs, with simple interest thereon on each item thereof from the date of the payment by the said Edwin A. Kramer to the date of the repayment by the plaintiffs.

And now, to wit, Dec. 24, 1929, after due consideration of the bill, answer, the evidence adduced at the time of the hearing and the briefs of the respective parties, it is ordered and decreed that the said Adelaide R. Kramer be enjoined and restrained from transferring or otherwise encumbering or invalidating the title which she holds in trust for the party plaintiffs to any other than the party plaintiffs or their nominees, heirs and assigns, the description of the said properties being known and designated in plaintiffs' bill as two properties at the corner of Delaware Avenue (formerly Richmond Street) and Montgomery Avenue, marked on the plan as plots "A" and "B," which form an integral part of the said large tract of ground and lumber yard so consolidated and more particularly and fully described in the plaintiffs' bill of complaint.

It is further ordered and decreed that the said Adelaide R. Kramer convey the said premises to the plaintiffs or their heirs or assigns by a good and sufficient deed, upon the payment to Edwin A. Kramer or to Adelaide R. Kramer, for the account of the said Edwin A. Kramer, of the sum or sums advanced by the said Edwin A. Kramer for the purchase of the property for the account of the plaintiffs, together with any and all taxes paid on said

property by him, together with legal interest on each item of said advancements thereof from the date of the payment by the said Edwin A. Kramer to the date of its repayment by the plaintiffs.

It is further ordered that the said Edwin A. Kramer pay the costs incidental to these proceedings.